MOBIL OIL CORPORATION, Plaintiff-Appellee, *v.* RALPH HURWITZ *et al.,* Defendants and Counterdefendants-Appellants.—(PREHN PLAZA, INC., Defendant and Counterplaintiff-Appellee.)

Fourth District   No. 14611

Opinion filed August 25, 1978.

Presney, Casper & Feurer, of Springfield (James D. Kelly and Paul E. Presney, of counsel), for appellants.

Raymond L. Terrell, of Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellee Mobil Oil Corporation.

Grady E. Holley, of Giffin, Winning, Lindner, Newkirk, Cohen, Bodewes & Narmont, of Springfield, for appellee Prehn Plaza, Inc.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The defendant individuals are members of a joint venture and The First National Bank is trustee under a land trust with the joint venture as beneficiary. They appeal from a permanent injunction entered upon the complaint of Mobil Oil prohibiting the sale of petroleum and petroleum products on the described real estate for the duration of a lease dated May 3, 1966, and any extension thereof between Prehn Plaza, Inc. (Prehn), as lessor, and plaintiff Mobil Oil Corporation (Mobil), as lessee.

By leave of court, Prehn, a corporation, was added as a party-defendant. In its answer Prehn joined in Mobil's prayer for the injunction granted and also filed a "countercomplaint" against the defendants which prayed enjoining of the sale of petroleum products by the defendants.

The written decree contains no findings of fact but the court stated findings of fact into the record. Mobil cross-appeals

"* * * from that portion of the Order entered by this Court * * * denying Plaintiff relief under the Prehn Plaza, Inc—Trader's Realty Corporation lease, * * *."

The prayer of Mobil's cross-appeal requests the reviewing court to modify that portion of the trial court's order

"* * * to include the life of a sublease entered into between Prehn Plaza, Inc., and Trader's Realty Corporation, Dewey E. Wilkins and Charles Rock, dated January 1, 1969, and any extensions thereof."

Prehn also filed a cross-appeal from the order of the trial court:

"* * * to the extent that such Order granting a permanent injunction constitutes a finding of fact or a finding of law that the provisions contained in paragraph (I) of a certain sub-lease, dated

January 1, 1969 between Prehn Plaza, Inc., a Delaware corporation and Traders Realty, Inc., a corporation, constitutes a restriction on the sale of petroleum products and related occupations for a period of two (2) years only."

The written decree contained no reference to the Prehn-Traders lease, and neither grants nor denies relief upon the covenant contained in the lease from Prehn to Trader. The respective cross-appeals are directed to the oral finding:

"[T]his Court finds that paragraph I of the Prehn to Traders sublease dated January 1, 1969 by itself would not be enforceable to restrict the sale of petroleum products on the property which is the subject matter of this litigation * * *."

■■ ■ Supreme Court Rule 301 provides for the appeal of "final judgments." It is consistently held that a "finding" upon which no final judgment has been entered is not a final appealable order. (*Wilke Metal Products, Inc. v. David Architectural Metals, Inc.* (1965), 55 Ill. App. 2d 34, 204 N.E.2d 35; *Astrauskas v. Tafoya* (1965), 64 Ill. App. 2d 429, 212 N.E.2d 249; *City of Moline v. Whimpey* (1965), 60 Ill. App. 2d 219, 208 N.E.2d 78; *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 231, 280 N.E.2d 455.) If a party desires to appeal an adverse finding, it is incumbent upon that party to see that a judgment is entered from which an appeal can be taken and where no final judgment is entered the appeal will be dismissed. (*City of Moline v. Whimpey.*) Supreme Court Rule 307(a)(1) provides for an appeal from an interlocutory order granting or refusing to grant an injunction. We find nothing in the latter rule, however, which alters the authorities holding that a "finding" is not an appealable order. The respective cross-appeals are dismissed.

By the assignment of certain leases Prehn held a long-term lease for approximately 19.5 acres of land owned by the City of Springfield. For purposes of these proceedings, Prehn may be deemed the common source of title of the parties concerned.

On May 3, 1966, Prehn subleased a portion of the 19.5 acres to Mobil Oil. The lease included the following:

"14. Lessor covenants that during the term of this lease and any renewal or extension thereof no real property located within one thousand (1,000) feet of the premises and either now or subsequently, directly or indirectly, owned, leased or controlled by Lessor shall be developed or used, in whole or in part, for the retail sale of automotive fuel provided, however, that this provision shall not apply to the premises. This covenant shall be deemed and construed as a covenant running with the land for the term of this lease, and any renewal or extension thereof, in favor of Lessee, its successors or assigns. Any deed or other instrument

delivered to Lessee in accordance with the provisions of paragraph 8 hereof or otherwise shall contain a similar covenant in form satisfactory to Lessee, including a provision that the covenant shall remain in effect until the date upon which the term of this lease including all renewal options would have expired had it continued in effect and all renewal options been exercised, and shall be accompanied by a separate declaration in recordable form sufficient to constitute notice of said covenant to persons subsequently acquiring interests in real property affected thereby. Any deed or other instrument delivered to any other person granting or conveying an interest in said real property or any part thereof shall contain a restriction so restricting the use of said property for the same period.

\* \* \*

33. All of the 19.466 acres, more or less, tract of land shown and described in the survey, except the premises leased to Lessee herein, is herein called the 'adjoining property'. As a part of the consideration for this lease, Lessor for itself, its successors and assigns and its and their tenants, covenants, and this lease is made upon the express covenant and agreement that neither the adjoining property nor any part thereof, shall at any time during the term of this lease and any extension or renewal thereof, be used for the storage, sale, distribution or advertising of petroleum, or the products or by-products thereof, except that the sale of motor oil by one tenant in said shopping center shall be permitted; that this covenant and agreement is imposed for the benefit of the premises leased to Lessee herein and is to run with the adjoining property and every part thereof; and that similar restrictive covenants shall be inserted in any deed or lease or other instrument conveying or demising the adjoining property or any part thereof. The survey provided for in Paragraph 31 shall include the adjoining property and a separate description thereof and Lessor agrees upon request by Lessee to execute an amendment to this lease to set forth the description thereof."

The lease was amended to set forth a legal description of the property.

It is not disputed that the real estate described in the injunction lease within the area described is subject to the covenant in the Mobil lease.

The defendants came into possession of the real estate through the following transactions: (1) On January 1, 1969, Prehn executed a sublease for a portion of the 19.5 acres to Traders Realty, Inc.; (2) on July 1, 1971, Traders assigned the lease to Sapp and Hurwitz, a co-partnership; (3) on October 1, 1974, Sapp and Hurwitz with two other defendants entered into a joint venture agreement for the operation of a Day's Inn; (4) on

October 1, 1975, Sapp and Hurwitz leased the property to the bank as trustee under a land trust, and Hurwitz was authorized to represent the members of the joint venture; (5) on November 1, 1975, the joint venture was amended to include the remainder of the individual defendants as members, and (6) on June 16, 1976, Sapp assigned his interest "franchise" to Hurwitz.

In the trial court a primary issue was whether Sapp and Hurwitz had actual or constructive notice of the fact of the Mobil covenants at the time of the assignment of the Traders' lease on July 1, 1971. The trial court found that Sapp did have "actual knowledge" of the restriction created in the Mobil lease as early as 1968 when he was employed by Prehn to negotiate additional subleases on the Prehn parcel, and that he, Sapp, obtained a copy of the Mobil lease which was in his file when he and Hurwitz acquired their interest in the Prehn parcel. A representative of Prehn testified that Sapp was told of the restriction during such negotiations.

The trial court also found that Traders had knowledge of the petroleum restriction at the time it acquired its lease in 1969, and that by reason of his dealing with Traders Sapp was put on notice of inquiry into the matter.

The trial court further found that Sapp was experienced in real estate transactions for some 25 years. His discovery deposition discloses that Sapp had built and sold or leased and acted as a broker regarding gasoline stations operations and that he knew that restrictive covenants or agreements were regularly sought to be included in the sale or lease for petroleum station operations.

The trial court stated that in the absence of a transcript he could not recall any evidence that Hurwitz had actual knowledge of the restrictions in the Mobil lease in July 1971, but that Sapp's knowledge of the restrictions would be imputed to Hurwitz as a partner.

Section 12 of the Uniform Partnership Act (Ill. Rev. Stat. 1969, ch. 106½, par. 12) provided, as it now does:

> "Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner."

■■ The context of the statute substantially coincides with language of the supreme court in *Greer v. Carter Oil Co.* (1940), 373 Ill. 168, 25 N.E.2d 805. Restrictions upon the use of this property are patently significant in the light of the value placed upon the property for commercial purposes.

Accordingly, we conclude that the trial court did not err in imputing the knowledge of Sapp to Hurwitz during the course of the transaction.

The record shows strong reasons to impute knowledge of the respective covenant to the members of the joint venture. As noted, Sapp and Hurwitz were the founders of the joint venture. The record shows that on April 17, 1974, counsel for Sapp and Hurwitz by a letter addressed to each advised that as to a lease of another portion of the area, there were problems with restrictive covenants regarding the sale of petroleum products. In March 1973, a title commitment issued by the Chicago Title & Trust Company procured and paid for by Sapp noted the respective covenants of the Mobil lease. A sublease by Sapp and Hurwitz for a term of 25 years, executed September 7, 1973, contained the restriction that no gasoline be sold. Thus, the record is clear that Sapp and Hurwitz had actual knowledge of the restriction at the time of forming the joint venture.

As a matter of law, the members of a joint venture stand in a fiduciary relationship one with another. (*Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375.) The relationship requires full disclosure to the associates in a joint venture. *Bakalis v. Bressler* (1953), 1 Ill. 2d 72, 115 N.E.2d 323.

■■ Defendants plead, as an affirmative defense, that Mobil is estopped by deed and by conduct from enforcing the restriction contained in the lease. The trial court found that while Mobil "encouraged" the making of the Prehn lease to Traders, it was not a party to the lease and did not participate in the drafting of the sublease to Traders so that there was no waiver of the restrictive covenant by Mobil. It cannot be said that upon such facts the determination of the trial court that Mobil was not estopped by reason of the provisions in the lease from Prehn to Traders is contrary to the manifest weight of the evidence.

Since the injunction was not issued upon the allegations in Prehn's countercomplaint, it is not necessary to discuss the affirmative defenses of estoppel arising in the sublease from Prehn to Traders.

Defendants urge that the restriction upon the sale of petroleum products should not be enforced because they imposed or created an illegal restraint upon trade. The potential duration of the restriction is 30 years if one assumes that Mobil exercises the two successive options to renew for 10 years. The area of the restriction is the remainder of the 19 acres, sometimes expressed as a distance of 1000 feet from the Mobil station. The trial court found that there were many operating gasoline stations in the area located upon the same street so that the restriction was not unreasonable in the area. He further found that there was a substantial investment in the property by Mobil, and that the restriction was reasonable as to its duration. The testimony shows that the lessor received a larger amount of rent and procured the waiver of Mobil's common

requirement of a right to cancel the lease upon 90 days' notice, and that such advantages to the lessor were matters of consideration in the provision for the restriction.

To support this argument, defendants cite certain cases relating to employment and personal service contracts. Such cases are keyed to the concept that an individual must be permitted to conduct his business or practice his profession in so far as the individual is limited in terms of time and area. Here, it is undertaken to demonstrate that the restriction seriously impairs the public interest.

Covenants by lessors have been sustained where incidental to a lawful transaction when reasonably limited in time and space. Baum, *Lessors' Covenants Restricting Competition*, 1965 U. Ill. L.F. 228. See also Annots., 97 A.L.R.2d 4, 11 (1964); 61 A.L.R.3d 397, 433-34 (1975).

Illinois has enforced covenants contained in deeds as against claims of violation of public policy. *Star Brewery Co. v. Primas* (1896), 163 Ill. 652, 45 N.E. 145 (restricting the use of premises as a dramshop as long as the grantor operated a saloon); *Wakefield v. VanTassell* (1903), 202 Ill. 41, 66 N.E. 830 (restricting the handling of grain on property conveyed); *Natural Products Co. v. Dolese & Shepard Co.* (1923), 309 Ill. 230, 140 N.E. 840 (restricting the quarrying of stone on the land conveyed).

■■ The facts of the record do not suggest any injury to the public in the enforcing of the restrictions against the sale of petroleum products upon the 19 acres or within 1000 feet of the existing Mobil station. The covenant so enforced does not function in perpetuity but is limited to the life of the sublease. Upon such facts it cannot be said that the interests of the public have been injured by the restriction.

The decree of the circuit court is affirmed.

Affirmed.

REARDON, P. J., and MILLS, J., concur.