**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellant,**

v.

**BRAEMOOR ASSOCIATES, et al., Defendants-Appellees.**

No. 81-3040.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1982.

Decided Aug. 13, 1982.

As Amended on Denial of Rehearing Oct. 28, 1982.

**552**

John B. Huck, Chapman & Cutler, Chicago, Ill., for plaintiff-appellant.

Richard M. Kates, Chicago, Ill., for defendants-appellees.

Before WOOD and POSNER, Circuit Judges, and CAMPBELL, Senior District Judge.*

POSNER, Circuit Judge.

The Federal Deposit Insurance Corporation, as successor in interest to a defunct Illinois state bank, the State Bank of Clearing, brought this suit against Braemoor Associates, a joint venture, and against five individuals who are the surviving joint venturers in Braemoor, seeking to recover bank monies that the bank's president, Paul Bere, had funneled to Braemoor in breach of his fiduciary obligations to the bank. The asserted basis of federal jurisdiction over the suit is 12 U.S.C. § 1819 Fourth, which provides that "all suits of a civil nature at common law or in equity to which the [Federal Deposit Insurance] Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the

* Of the Northern District of Illinois.

amount in controversy ...." There was a bench trial, but at the close of the FDIC's case the defendants moved for dismissal of the complaint under Rule 41(b) of the Federal Rules of Civil Procedure, and the motion was granted.

We consider first, as we must though no party to this litigation has raised the question, whether the federal courts have jurisdiction over the subject matter of the litigation. Section 1819 Fourth excepts from its grant of jurisdiction to those courts any suit to which the FDIC "is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law ...." When the State Bank of Clearing was closed down, the Illinois banking commissioner appointed the FDIC as receiver, see Ill.Rev.Stat.1981, ch. 17, § 370, and the FDIC accepted appointment pursuant to 12 U.S.C. § 1821(e). Had the FDIC brought this suit—a suit to impose a constructive trust by reason of Paul Bere's violation of his fiduciary obligations under state law—in its capacity as receiver, the proviso, quoted above, to the grant of federal jurisdiction in section 1819 Fourth would have prevented the FDIC from maintaining the suit in federal court, at least under that section, which is the only basis of federal jurisdiction alleged. *FDIC v. Sumner Financial Corp.*, 602 F.2d 670, 679–80 (5th Cir. 1979). The complaint goes on to allege, however, that the FDIC, in conformity with Illinois law, used its position as receiver to transfer to itself certain bank assets, including the bank's cause of action against the defendants, and that it is suing in its capacity as owner of those assets rather than in its capacity as receiver. These allegations have not been denied; nor is there any doubt that the FDIC has authority under federal law to obtain bank assets in this fashion. See 12 U.S.C. §§ 1821(e), 1823(e). And when the FDIC is suing to realize on such assets there is federal jurisdiction under section 1819 Fourth. *FDIC v. Ashley*, 585 F.2d 157, 161–62 (6th Cir. 1978).

The only novelty is that the asset that the FDIC is suing to realize on in this case is a cause of action, rather than as in the usual case a note or other financial instrument. *Ashley* is some authority for the proposition that this makes no difference, because the court in *Ashley* mentioned that the assets that had been transferred to the FDIC included causes of action against the bank's directors, 585 F.2d at 160; but since the opinion contains no separate discussion of these assets, we cannot be certain that the court would have thought them enough to support federal jurisdiction over the suit. The difficulty with basing jurisdiction solely on such an asset is that the enforcement of a bank's cause of action is precisely the sort of thing that a receiver would do, and the receiver's action in transferring the cause of action to itself therefore seems like an effort—a rather transparent one at that—to get around the jurisdictional limitations in section 1819 Fourth.

But we think it is necessary to distinguish between a transfer for value and one not for value. If the FDIC purchased the claims of the State Bank of Clearing against these defendants that would be the bona fide acquisition of a genuine asset, and a suit to realize on that asset would not be a suit in the FDIC's capacity as a receiver. Cf. *Ashley, supra*, 585 F.2d at 162; *FDIC v. Godshall*, 558 F.2d 220, 223 (4th Cir. 1977). The complaint alleges, without contradiction, that the transfer of assets to the FDIC was in accordance with Illinois law and was consented to by the circuit court of Cook County; and we think it unlikely, to say the least, that the circuit court would have allowed the FDIC to pocket assets of the State Bank of Clearing without giving anything in return. We find nothing in the Illinois Banking Act that would authorize such conduct. See Ill.Rev.Stat.1981, ch. 17, §§ 372–73. We also think there is no question of the assignability of the bank's claim to the FDIC. See *Pattiz v. Semple*, 12 F.2d 276 (E.D.Ill.1926), aff'd, 18 F.2d 955 (7th Cir. 1927). Of course it is possible that the jurisdictional allegations are a lie—that the FDIC and the defendants are colluding to confer jurisdiction on the federal courts in contravention of the limitations in section 1819 Fourth—but we do not think that our obligation to police the limitations on our jurisdiction requires us to investigate such a hypothesis. We conclude that we have jurisdiction, though we deprecate the FDIC's failure to allege more fully the facts establishing federal jurisdiction.

There is another threshold issue not raised by the parties, and though it does not go to subject-matter jurisdiction we shall consider it on our own initiative. It is whether the substantive law to be applied in this case is federal common law or state law (if the latter, the state whose law applies is clearly Illinois). From the predominance of Illinois citations in the briefs and in the district court's conclusions of law we infer that the parties and the district court assumed that Illinois law supplied the rule of decision; but they did not say so, and it is at least possible, in light of the language of 12 U.S.C. § 1819 Fourth and certain judicial decisions, that they thought federal common law applied but was identical to Illinois law.

We expressed recently and remark once again our queasiness at being asked to decide an appeal without being told by the district court what substantive law to apply—state or federal, and if the former which state's law it is. *Central Soya Co. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 941 (7th Cir. 1982). In some cases insistence on an explicit statement of the source of law would be pedantic, but not here. Maybe the "arising under" language of section 1819 Fourth is just a redundant way of conferring jurisdiction on the federal courts rather than a direction to those courts to create a common law of rights and obligations of the FDIC; but an unbroken line of decisions beginning with *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), holds that the substantive law to be applied in suits to which the FDIC is a party is indeed federal common law, not state law. See *FDIC v. Timbalier Towing Co.*, 497 F.Supp. 912, 918 (N.D.Ohio 1980), and cases cited there. When the FDIC is

suing as a receiver appointed under state law the applicable substantive law is state rather than federal, *FDIC v. Leach*, 525 F.Supp. 1379, 1384 (E.D.Mich.1981), but as we have pointed out this is not such a suit and could not be brought in federal court if it were.

However, the *D'Oench* line of cases is not so devastating to the approach taken below as might appear. As we noted recently in considering a related question—whether state or federal common law should supply the rule of decision for cases involving the construction of U. S. Postal Service leases— one choice for the federal common law judge is to adopt local law as the rule of decision. *Powers v. United States Postal Serv.*, 671 F.2d 1041, 1043 (7th Cir. 1982). That choice is attractive in the present case given the nature of the FDIC's claim.

The FDIC is suing as the assignee of the State Bank of Clearing's cause of action under state law against the defendants, and it is difficult to see why assignment to the FDIC should alter or enlarge that cause of action. *D'Oench*, though the Supreme Court refused in that case to follow state law, does not support such a metamorphosis. In *D'Oench* the FDIC had lent money to a bank that it had insured, and had received a note as collateral; and the question on which the Court refused to follow state law was whether the FDIC was a holder in due course, so that it could collect on the note free of the defenses that the payor might have had against the original payee. *D'Oench* was thus a case involving the rights of the United States in contracts to which it is a party, and is one of several cases all decided at about the same time that suggest that the rule of decision in such cases should be federal rather than state. See *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *United States v. County of Allegheny*, 322 U.S. 174, 183, 64 S.Ct. 908, 913–914, 88 L.Ed. 1209 (1944); *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 125–126, 92 L.Ed. 32 (1947). Whatever the contemporary vitality of these cases—on which see *In re Murdock Machine & Engineering Co. of Utah*,

620 F.2d 767, 772 (10th Cir. 1980), and *Powers v. United States Postal Serv., supra*, 671 F.2d at 1045—they do not control the present case: it does not involve a contract to which the FDIC is a party.

■ True, the FDIC has a vital stake in any asset of a defunct bank that it has insured; the statute under which it operates contemplates the transfer of assets, presumably including causes of action, from such a bank to the FDIC, see 12 U.S.C. §§ 1823(d), (e); and *D'Oench* teaches that an asset can confer on its holder greater rights when it comes into the hands of the FDIC. These considerations, coupled with the language of section 1819 Fourth, suggest that in an appropriate case a federal court could reject state substantive law if that was necessary to protect the FDIC's interest in minimizing depositor losses which it must make good. But the absence of any ready-made federal common law in most of the areas of law in which it might be applied, and a general reluctance to displace state law without explicit statutory or constitutional direction to do so, support a presumption that state law is adequate and should be adopted by the federal court as the rule of decision. See *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 740, 99 S.Ct. 1448, 1464–1465, 59 L.Ed.2d 711 (1979); *Powers v. United States Postal Serv., supra*, 671 F.2d at 1045. The presumption is unrebutted here, so we can turn at last to the merits.

Braemoor Associates was formed in 1970 by several individuals, including Paul Bere, the president and board chairman of the State Bank of Clearing, to develop real estate. (Bere died before this suit was brought, and neither he nor his estate is a defendant.) Between 1970 and 1972 Bere caused the bank to make nine loans, totaling more than $500,000, to various of the joint venturers for use by Braemoor. These loans violated state law. Although it is not unlawful per se for an Illinois bank to make a loan to its officers, or to enterprises which the officers control or actively manage, such loans, if they exceed $10,000, as each

of the nine loans did—require the approval of the bank's board of directors, see Illinois Banking Act, § 37(1), Ill.Rev.Stat.1981, ch. 17, § 347(1), and implicitly therefore disclosure of the conflict of interest to the board. Since that disclosure was not made, the board's approval of these loans, an approval procured by fraud, was ineffective. However, all these loans were eventually repaid to the bank and are not in issue here.

Ringbloom, a real estate entrepreneur with whom Paul Bere had extensive business dealings, owned a company called Western. Bere and Ringbloom agreed that Western would purchase some land owned by Braemoor but the terms of payment were left somewhat indefinite. Late in 1971 Braemoor found itself owing a $60,000 installment payment to one of its contractors. Braemoor had less than $2000 in its bank account. Bere asked Ringbloom to pay Braemoor $60,000 on account of Western's land purchase so that Braemoor could pay the contractor, but Ringbloom said that Western did not have the money. Bere thereupon had the State Bank of Clearing lend Ringbloom $60,000 and Ringbloom immediately made out a check drawn on Western's bank account in the State Bank of Clearing for the same amount, payable to Braemoor. Ringbloom handed the check to Bere, who had it deposited in Braemoor's bank account. Braemoor then paid the contractor $60,000. The fact that the actual destination of the $60,000 loan from the State Bank of Clearing to Ringbloom was an enterprise controlled by Bere was not disclosed to the bank's board of directors. It is the first of the two loan transactions at issue in this case.

Several months later Braemoor needed to pay another installment to one of its contractors, this one for $240,000. Braemoor had only $16,000 in its bank account. Again Bere turned to Ringbloom, though Western was not due to make a payment to Braemoor on its land purchase agreement at that time. Again Western did not have the money, and again Bere stepped into the breach with a loan from his bank. This transaction was more intricate than the previous one. Bere had previously asked his brother, Lambert Bere, another of the joint venturers in Braemoor, to sign a note in blank payable to the State Bank of Clearing and to leave the note with him, Paul; and Lambert had done so. Paul now completed the note by making it out for $417,000, and directed the bank to lend this amount to Lambert. The money was deposited in a joint account maintained by Lambert and his wife at the State Bank of Clearing. A few days later Paul caused the entire amount to be transferred out of the account. At his direction, $167,000 was used to pay off loans that one of Ringbloom's companies had gotten from the bank, and the other $250,000 was deposited in Western's checking account at the bank. Western made out a check for $240,000 to Braemoor on the same day. From that point on the transaction was handled identically to the $60,000 loan.

The $240,000 payment to Braemoor is the second transaction at issue in this case. Lambert testified that he was stunned to receive his July 1972 bank statement showing a credit and offsetting debits for $417,000 and that he asked Paul about them but never received an explanation. The actual destination of the $417,000 loan was again not disclosed to the bank's board of directors.

The $60,000 loan to Western that found its way into Braemoor's pockets and the $240,000 portion of the second loan that also found its way into Braemoor's pockets were made in violation of Paul Bere's fiduciary obligations to his bank under section 37(1) of the Illinois Banking Act; and the question is whether this breach of trust may be imputed to Braemoor. If so, it is not disputed that the FDIC may recover the proceeds of the breach in the hands of Braemoor; and since the principles of partnership law apply to joint ventures of individuals, *Smith v. Metropolitan Sanitary District of Greater Chicago*, 77 Ill.2d 313, 318, 33 Ill. Dec. 135, 138, 396 N.E.2d 524, 527 (1979), there is also no question that if Braemoor is liable so are the individual defendants.

The district court found that the FDIC had failed to prove that the defendants had

either (1) actual knowledge of Paul Bere's breach of trust or (2) knowledge of such facts as would lead a reasonable man to inquire whether Bere was committing a breach of trust; and the court concluded that without such proof the FDIC could not prevail. The FDIC does not challenge the finding that the defendants had no actual knowledge of the breach of trust, but it argues that the finding that they had no constructive notice is clearly erroneous and that in any event there are alternative grounds for recovering the monies sued for that have nothing to do with what the joint venturers, other than Paul Bere himself, may have known, so that the district court's legal conclusion is incorrect even if none of its factfindings is.

We need not decide whether either factfinding is clearly erroneous. The FDIC's right to recover the proceeds of the two payments to Braemoor under the provisions of the Uniform Partnership Act (adopted in Illinois) is independent of what the other joint venturers knew, or as reasonable men should have known, about Paul Bere's breach of trust. Although the district court did not discuss the defendants' liability under the Uniform Partnership Act, the defendants do not contend that this theory of liability was not before the district court and should not be considered by us.

 A joint venture of individuals is subject to the Uniform Partnership Act, *Mobil Oil Corp. v. Hurwitz*, 63 Ill.App.3d 430, 20 Ill.Dec. 372, 380 N.E.2d 49 (1978), as indeed the Braemoor joint venture agreement expressly recites. Section 12 of the Act, Ill.Rev.Stat.1981, ch. 106½, § 12, provides that "the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, ... operate[s] as ... knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner." Paul Bere, a partner in Braemoor, knew that in funneling $300,000 of his bank's money to Braemoor through Ringbloom, Western, and Lambert Bere he was violating his fiduciary duty to the bank under section 37(1) of the

Illinois Banking Act. Section 12 of the Uniform Partnership Act "imputed" that knowledge to the other joint venturers, which is to say made them and Braemoor, despite their lack of knowledge, fully liable for the breach of trust and hence constructive trustees of the proceeds of that breach for the benefit of the bank and its successor in interest, the FDIC, just as Paul Bere would have been if the FDIC had sued him. See *Howard v. Hamilton*, 28 N.C.App. 670, 675, 222 S.E.2d 913, 917 (1976). The exception in section 12 of the Uniform Partnership Act for frauds on the partnership is not applicable to this case, because Paul Bere was committing fraud on behalf of rather than against the partnership. Cf. *Maclay v. Kelsey-Seybold Clinic*, 456 S.W.2d 229, 234 (Tex.Civ.App.1970), aff'd, 466 S.W.2d 716, 719 (Tex.1971); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 at 454–56 (7th Cir. 1982). We neither see, nor desire to concoct, any escape from the language of section 12. "The rule which imposes civil liability upon an 'innocent' partner for bad faith dealing of a co-partner is most pointedly applicable where the co-partner participates in the benefits derived from the dealing in bad faith." *Higgins v. Shenango Pottery Co.*, 256 F.2d 504, 509 (3d Cir. 1958), construing an identically worded predecessor provision to section 12.

 We reach the same conclusion by an alternative route. Section 13 of the Uniform Partnership Act, Ill.Rev.Stat.1981, ch. 106½, § 13, provides that "where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, ... the partnership is liable therefor to the same extent as the partner so acting or omitting to act." There is no doubt that Paul Bere's violation of section 37(1) of the Illinois Banking Act caused an injury to the bank (and hence to its successor in interest, the FDIC), so that Braemoor is liable if Bere was acting either "in the ordinary course of [Braemoor's] business"

or "with the authority of" the other joint venturers; and we think he was doing both. The nine loans made at Paul Bere's direction by the State Bank of Clearing to the individual joint venturers for the benefit of Braemoor show that Bere was acting in the ordinary course of Braemoor's business when he channeled bank money to Braemoor in violation of the Illinois Banking Act. This is perfectly clear with respect to the nine loans themselves and scarcely less so with respect to the two loans in issue here. The fact that the money went from the bank to Braemoor through Ringbloom and Western, or as in the second transaction through Ringbloom, Western, and Lambert Bere, rather than directly, is a detail. They were transactions, "laundered" transactions to be sure, by which Paul channeled the bank's money to Braemoor; and the financing of Braemoor by the bank had become the ordinary course of business for Braemoor. Cf. *Zemelman v. Boston Ins. Co.*, 4 Cal.App.3d 15, 84 Cal.Rptr. 206 (1970).

■ We also think his partners authorized Paul Bere to channel bank money to Braemoor. They knew, from the eight of the nine loans that predated the two loans in issue, that Bere was channeling money from his bank to Braemoor, and they obviously approved, and thereby authorized, his doing so. We can imagine no theory under which Paul Bere was authorized to borrow upwards of $500,000 from the bank directly for Braemoor but not to borrow additional sums indirectly, through Ringbloom and Western. Why should his co-venturers have cared what route the money followed from its source? This is not to say that the actual violation of the Illinois Banking Act was authorized; we accept the district court's finding that the other venturers did not know of any such violation. But section 13 of the Uniform Partnership Act requires only that the partner who commits the wrong be acting with the authorization of his partners when he does so—not that the violation itself be authorized, see *Elle v. Babbitt*, 259 Or. 590, 488 P.2d 440, 446–47 (1971)—and Paul Bere was acting with that authorization when he committed the violation; he was not off on some frolic of his own. As for the district court's finding that "the defendants did not impliedly delegate to Paul the authority to arrange financing for the purchase of the Braemoor properties," we do not understand its relevance. The loans in issue were not for the purchase of any properties; they were for a street and sewer system on property already owned by Braemoor.

There is nothing novel or exotic about the principles embodied in sections 12 and 13 of the Uniform Partnership Act or their application to the facts of this case. The two sections, section 13 especially, merely extend to partnerships familiar principles of agency law, among them the principle of *respondeat superior*, whereby an employer is liable for the torts of his employees committed in the course of their employment. The extension of this principle to partnerships antedates the Uniform Partnership Act. See *Hamlyn v. John Houston & Co.*, 1903 L.R. 1 K.B. 81 (C.A.1902). The district court erred by limiting its analysis to the distinct principles that govern cases where property that has been obtained in breach of trust comes into the hands of a third party who is not the principal or agent or partner of the person who committed the breach or is otherwise linked to him by a preexisting relationship, but is a stranger, and the question is whether the stranger has sufficient notice of the breach of trust to be forced to disgorge the property. See *Kurowski v. Burch*, 8 Ill.App.3d 716, 720, 290 N.E.2d 401, 405 (1972), aff'd, 57 Ill.2d 292, 312 N.E.2d 284 (1974); Restatement of Restitution § 168(2) (1937); 4 Scott, The Law of Trusts §§ 296–97 (3d ed. 1967). The law imposes greater duties on people with regard to the acts of their agents and partners than with regard to the acts of strangers, presumably to give people an incentive to choose carefully with whom to enter into ventures that may injure innocent third parties.

So we need not consider whether the district court, treating this as if it were a case where the breaching trustee and the constructive trustee were strangers rather than partners, was correct in concluding as

a matter of fact that the joint venturers lacked knowledge of such facts as would have led reasonable men to inquire further into whether Paul Bere was committing a breach of trust—though we shall not conceal our skepticism that Lambert Bere did all that a reasonable man should have done to inquire into the circumstances whereby $417,000 passed mysteriously in and out of his bank account in a space of days. The liability of the joint venturers under the Uniform Partnership Act is independent of their knowledge—whether actual or, under general principles of restitution, constructive—of Paul Bere's breach of trust.

▪ The FDIC has still another theory of liability—that the defendants conspired with Paul Bere to commit a breach of trust against the bank. The district court rejected this theory on the facts, finding that the FDIC had failed to prove that the defendants actually knew of Bere's breach of trust. This finding is at least plausible; although they knew he was borrowing money from the bank for his joint venture his borrowing would not have been a breach of trust had Bere gotten the informed consent of his board of directors, a matter about which the defendants could not be presumed to know. At any rate we cannot say that the district court's finding was clearly erroneous, so we affirm this part of its judgment. However, the rejection of the FDIC's theory of liability under the Uniform Partnership Act was erroneous, and the judgment dismissing the complaint must therefore be reversed and the case remanded for further proceedings consistent with this opinion.

So ORDERED.