**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Theodore HARDT, Defendant.**

**No. 85–3553.**

United States District Court, C.D. Illinois, Springfield Division.

Oct. 23, 1986.

Mark Lipton, David E. Worsley, Champaign, Ill., for plaintiff.

Mercer Turner, Bloomington, Ill., for defendant.

---

## OPINION ORDER

MILLS, District Judge:

Is the guarantor discharged from liability where the creditor fails to perfect its security interest in the collateral?

No.

Summary judgment for Plaintiff.

This suit is brought by the Federal Deposit Insurance Corporation (FDIC), in its corporate capacity. The FDIC seeks to collect on a note and related guaranty which it purchased from the receiver of an insolvent bank. Dennis Hardt is the maker of the note and Theodore Hardt is the guarantor of the note. The first count seeks collection against the maker and the second count predicates liability on the guaranty agreement. This Court has since dismissed Count I for failure to serve process on Defendant Dennis Hardt.

The matter is now before the Court on cross motions for summary judgment as to Count II. Because the FDIC appears in its corporate capacity, jurisdiction is properly based on 12 U.S.C. § 1819 (1982). *See Federal Deposit Ins. Corp. v. Braemoor Associates*, 686 F.2d 550 (7th Cir.1982). The issue raised on the cross motions is whether the guarantor is discharged from the liability on the guaranty agreement due to the creditor's failure to perfect a security interest in collateral securing the underlying obligation.

### Facts

The facts are not in dispute. Dennis Hardt signed and executed a promissory note payable to First National Bank of Danvers on April 28, 1983. The note was to be secured by a Ford van. In connection with the note, Theodore Hardt entered into a guaranty agreement with the bank on April 20, 1983. He agreed to guarantee repayment of the obligation up to $18,000. The bank failed to perfect a security interest in the Ford van.

On or about August 5, 1983, the Comptroller of the Currency determined that the bank was insolvent, ordered the bank closed, and tendered to FDIC the appointment as Receiver of the bank. FDIC, as receiver, solicited bids and sold certain assets and liabilities of the bank. FDIC, in its corporate capacity, purchased the note and guaranty in question. FDIC made a demand for payment upon both the maker and the guarantor and both parties defaulted on the respective agreements. We are now concerned only with the liability of the personal guaranty of Theodore Hardt.

### I.

Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). Cross motions for summary judgment require no less careful scrutiny of the factual allegations. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voight*, 700 F.2d 341, 349 (7th Cir.1983).

In determining whether such undisputed facts entitle one of the parties to judgment in their favor, the Court's inquiry "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [moving party] is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (*quoting Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872) (emphasis in original)).

The parties are essentially in agreement as to the facts that are necessary to resolve the issues presented by the motions now before the Court. The entry of summary judgment is therefore appropriate.

### II.

Plaintiff, FDIC, bases its claim of liability on the guaranty agreement executed by Defendant, Theodore Hardt. Hardt defends on the basis of the predecessor bank's failure to perfect a security interest

in the collateral securing the loan. Ill.Rev. Stat., ch. 26, § 3–606(1)(b) (1985).[1]

The FDIC's reply to the defense is two-fold. Initially it argues that Defendant waived his right to complain about the impairment of collateral by express provision of the guaranty agreement. Next, the FDIC asserts that § 3–606 is not applicable because the guaranty agreement is not a negotiable instrument. We will discuss these contentions in the reverse order from which they were raised. Logically, a discussion of the applicability of statutory language providing a defense precedes a discussion of a purported waiver of that defense.

## A.

■ Ill.Rev.Stat., ch. 26, § 3–606 provides in part:

> (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder ...

> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

Defendant relies upon this section of the Uniform Commercial Code (UCC) for the proposition that he is released from liability on the guaranty agreement. Defendant is correct in maintaining that failure by the holder to perfect a security interest in the collateral securing the debt does constitute unjustifiable impairment of collateral within the meaning of the Code. *North Bank v. Circle Investment Co.,* 104 Ill.App.3d 363, 369, 60 Ill.Dec. 105, 108, 432 N.E.2d 1004, 1007 (1982). However, this is only part of the inquiry under § 3–606 of the UCC. In order to benefit from the discharge from liability, the Defendant must be a "party to the instrument" within the meaning of the UCC.

Therefore, prior to considering what constitutes unjustifiable impairment of collateral, we must determine whether the guaranty agreement is an instrument under Article 3 of the Illinois version of the UCC.

The FDIC cites two cases for the proposition that a guaranty agreement is not an instrument under Article 3 of the UCC. In *Ishak v. Elgin National Bank,* an Appellate Court of Illinois construed a similar guaranty agreement as "a separate contract for value entered into by the plaintiff independent of the promissory note." 48 Ill.App.3d 614, 617, 6 Ill.Dec. 630, 632, 363 N.E.2d 159, 161 (1977). On this reasoning the Court found that the guaranty agreement was not a negotiable instrument. A federal district court applying Illinois law adopted essentially the same reasoning and result. *Exchange National Bank of Chicago v. Brown,* 41 UCC Rep.Serv. 895, Slip Op. No. 84C10801 (N.D.Ill., August 9, 1985) [Available on WESTLAW, DCTU database].

We agree with the result reached in these cases. Hence, we find that the guaranty agreement in the present case is not a negotiable instrument. However, we speak further to explain precisely why the guaranty is not a negotiable instrument.

To say that the agreement is "separate" from the promissory note does not fully explain why the agreement is not an instrument under § 3–606 of the Code.

The Code defines an instrument as a negotiable instrument. Ill.Rev.Stat., ch. 26, § 3–102 (1985). Thus, to be an instrument at all, the instrument must be negotiable. A negotiable instrument is defined as:

> (1) Any writing to be a negotiable instrument within this Article must

> (a) be signed by the maker or drawer; and

**1.** The Seventh Circuit has held that when the FDIC is a party to a suit in federal court, the substantive law to be applied is federal common law. *Federal Deposit Ins. Corp. v. Braemoor Associates,* 686 F.2d 550, 553 (7th Cir.1982). In accordance with this case and in the absence of any federal common law in this area, we see no reason why we should not adopt local law as the rule of decision in this case. *Id.* at 554. Therefore, the Illinois version of the Uniform Commercial Code is applicable to this case.

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer. Ill.Rev.Stat., ch. 26, § 3–104(1) (1985).

If § 3–606 is indeed applicable to this case, the guaranty agreement must meet the statutory definition of negotiable instrument delineated above. However, a guaranty agreement by its very definition does not meet this requirement. A negotiable instrument must contain an "unconditional promise to pay a sum certain." Ill.Rev.Stat., ch. 26, § 3–104 (1985). A guaranty agreement, however, is conditioned on non-payment by the principal debtor. This is true regardless of whether the agreement is labeled as an unconditional or conditional guaranty. The fact that the agreement itself is conditional is demonstrated in that "a creditor may not refuse a tender of payment by the principal debtor and then force the guarantor to make good on his guaranty." *Federal Deposit Insurance Corp. v. Galloway*, 613 F.Supp. 1392, 1400–01 (D.Kan.1985); *accord United States v. Meadors*, 753 F.2d 590, 599 (7th Cir.1985).

Further, the guaranty fails to meet the "sum certain" requirement of negotiability. A "sum certain" is not payable because the amount due on the guaranty is dependent upon how much has been paid by the principal obligor. *Cobb Bank & Trust Co. v. American Manufacturers Mutual Ins. Co.*, 459 F.Supp. 328 (N.D.Ga.1978).

Finally, *McHenry State Bank v. Y & A Trucking, Inc.*, a case cited by Defendant, is distinguishable. In *McHenry State*

*Bank,* the Court found that a guaranty executed on the back of a promissory note was negotiable and that § 3–606 was applicable. 117 Ill.App.3d 629, 632, 73 Ill.Dec. 485, 487, 454 N.E.2d 345, 348 (1983). More specifically, the Court found that the promissory note itself was negotiable. *Id.* Thus, because the guaranty was part of a note, which itself was a negotiable instrument, § 3–606 was applicable. Here, the guaranty is not part of an instrument which is in and of itself negotiable. It is in this narrow instance that the "separateness" of the guaranty may be dispositive of whether § 3–606 applies.

For these reasons we find that the guaranty agreement executed by Defendant is not a negotiable instrument under Article 3 of the UCC. Therefore, we hold that the defense of unjustifiable impairment of collateral provided by § 3–606 of the UCC is not applicable to this transaction.[2]

### B.

■ Because we have held that § 3–606 is inapplicable to this case, it is not essential that we discuss waiver. Nevertheless, because it provides an additional ground for our holding, we will briefly discuss this question.

We believe that Defendant waived any right to complain of the failure to perfect the security interest through the express language of the agreement.

The agreement executed by Defendant provided in part:

The undersigned consent that without notice to, and without impairing or affecting the obligations of, the undersigned (1) said Bank, its successors or assigns, may from time to time change the manner, place or terms of payment and/or extend the time of payment of, or

---

**2.** Defendant loosely attempts to argue that even outside of the UCC and § 3–606, Defendant should be released from liability under common law principles of surety law. However, the case he cites involves a surety agreement as opposed to a guaranty agreement. *Chicago Bridge & Iron Co. v. Reliance Ins. Co.*, 46 Ill.2d 522, 264 N.E.2d 134, 136 (1970). Of course, the legal relationship created by a surety contract and a guaranty contract are two different things. The surety is primarily liable on the original contract whereas the guarantor's liability is only secondary. *Vermont Marble Co. v. Bayne*, 356 Ill. 127, 190 N.E. 291 (1934). Because this is a guaranty agreement, we need not apply principles of suretyship law outside those provided in the UCC.

renew, in whole or in part, any obligation of the Borrower for such time or times as it may determine, and the guaranty herein made shall apply to any obligation changed and/or extended in any manner, (2) *any property by whomsoever and at any time and from time to time pledged or mortgaged to secure such obligations may be exchanged, released, surrendered, realized upon, or otherwise dealt with in any manner, as said Bank, its successors or assigns, may determine,* (3) and said Bank may settle or compromise with the Borrower and any other person or persons liable in any manner on such obligations hereby guaranteed on such terms and to such extent as it sees fit and may subordinate the payment of all or any part thereof to the payment of any obligations which may be due to it or others. (Emphasis added).

In *Exchange National Bank of Chicago v. Brown,* a similar provision was held to be a valid consent to an act waiving or releasing a security interest in collateral securing the underlying debt. We believe the language of this agreement, while not precisely the same, is close enough to the language in *Brown* to warrant the same conclusion. 41 UCC Rep.Serv. 895, Slip Op. No. 84C10801 (N.D.Ill. August 9, 1985) [Available on WESTLAW, DCTU database]. *See also National Acceptance Co. v. Wechsler,* 489 F.Supp. 642 (N.D.Ill.1980).

Defendant argues that because the guaranty in question does not specifically waive any "failure, neglect or omission" on the part of the creditor, there is no valid waiver as to the bank's failure to perfect the security interest. We disagree.

Consent to affirmatively release or surrender or otherwise deal with collateral certainly includes an ability to release the collateral through neglect or omission. To say that the creditor can completely dispose of collateral but would retain liability to perfect on the very same collateral does not make sense. The fact that the collateral is surrendered by act or omission is not of great significance so long as there exists a valid consent to its release. There-

fore, we find that Defendant waived the right to complain about the failure to perfect the security interest.

For all of the foregoing reasons, Plaintiff's motion for summary judgment is ALLOWED. Defendant's motion for summary judgment is DENIED. Case CLOSED.