THE PEOPLE *ex rel.* STONY ISLAND CHURCH OF CHRIST *et al.*, Plaintiffs-Appellants, v. RANDOLPH MANNINGS, JR., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 86—1325

Opinion filed May 26, 1987.—Rehearing denied June 25, 1987.

Ward P. Fisher and Karen G. Fisher, both of Chicago, for appellants.

Gerald Simmons, of Salone, Salone, Simmons & Associates, of Chicago, for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an interlocutory appeal by the Stony Island Church of Christ and its elders, John W. Davis and John Driver, from an order vacating an *ex parte* temporary restraining order and denying a petition for preliminary injunctive relief. Defendants Randolph Mannings, Jr., Jack Curtis, and Alfonso Woodward have cross-appealed.

The initial action was brought in *quo warranto* and for injunctive relief by the elders of the Stony Island Church of Christ (the church) against former officers of the church who were charged with seizing control of the religious and business affairs of the church without authority. Following a hearing, the trial court issued a temporary restraining order and a preliminary injunction. Defendants then filed a motion to vacate the temporary restraining order and to amend their counterclaim to reflect that the church was incorporated under the General Not for Profit Corporation Act (GNFPCA) (Ill. Rev. Stat. 1985, ch. 32, par. 163a), as well as under "An Act concerning corporations" (the Religious Corporations Act or RCA) (Ill. Rev. Stat. 1985, ch. 32, par. 164 *et seq.*). Following another evi-

dentiary hearing, the temporary restraining order was dissolved and defendants' motion to terminate the preliminary injunction was granted.

On appeal, plaintiffs raise the following issues: (1) whether the trial court erred in finding that the church "re-incorporated" as a not-for-profit corporation; (2) whether the trial court erred in finding that the elders violated the bylaws of the church so that their removal of defendants from church office was an *ultra vires* act; and (3) whether the court abused its discretion in dissolving the preliminary injunction. The defendants have cross-appealed from the trial court's finding that the congregation lacked power to remove the elders.

The following facts are pertinent to this appeal. The Stony Island Church of Christ was originally incorporated in 1928 pursuant to the Religious Corporations Act of 1872. When this cause of action arose, the church had two elders, John W. Davis (Davis) and John Driver (Driver). At a church business meeting held on December 22, 1985, Davis was presented with a petition requesting his voluntary resignation. He refused to resign and the congregation thereafter voted to oust him as an elder.

The next day, Davis and Driver mailed certified letters to defendants Randolph Mannings, Jr. (Mannings), and Jack Curtis (Curtis), respectively the secretary and the treasurer of the church, removing them from office. Davis and Driver then went to the Pullman Heritage Bank, where they attempted to remove Mannings and Curtis as authorized signators on the church bank accounts.

In January 1986, the congregation petitioned Driver to resign as an elder. Thereafter, Davis and Driver filed an action in *quo warranto* seeking to enjoin defendants from exercising control over the religious and business affairs of the church. It was alleged, among other things, that the defendants: illegally retained church funds, executed documents, opened a bank account in the church name, attempted to withdraw church funds, and refused to return church records and property.

A hearing on the preliminary injunction was held on April 7, 1986. Peter Bumpass, minister of the South Holland Church of Christ, testified regarding prior litigation which concerned the role of the elders of the church. (See *Stony Island Church of Christ v. Stephens* (1977), 54 Ill. App. 3d 662, 369 N.E.2d 1313.) During the prior litigation, Bumpass had been appointed by the court as one of three arbitrators who conducted extensive hearings concerning the role of elders in the church. A finding by the court in that matter

determined that the church could function with a minimum of two elders and that the congregation did not have the authority to dismiss the elders of the church by majority rule.

Bumpass also testified that elders control the religious and business affairs of the church and only the elders serve on the board of directors (the board), which has the authority to select the treasurer and the secretary of the church. He further testified that the qualifications of the elders are based on scripture and that as basic polity and theology, specific numbers of elders are not required.

Elder Driver testified that he had been an elder since 1977, that Davis was appointed at the same time, and that they are presently the sole elders of the church. In their capacity as directors of the board, they appointed Mannings as secretary and Curtis as treasurer of the church. Driver further testified that there was no basis within the bylaws, customs, or practices of the church for Mannings' proclamation on December 22, 1985, that Davis was no longer an elder. He stated that pursuant to section 6 of the church bylaws, he and Davis removed Mannings and Curtis from their respective positions. Davis also testified that despite having been terminated, Mannings and Curtis have persisted in their activities and that serious harm would result to the congregation if a court order were not entered.

Following the hearing the court entered a temporary restraining order and preliminary injunction. The court found that Davis and Driver were the duly constituted and sole elders and directors of the church and were in charge of the religious and business affairs of the church in accordance with its bylaws, customs, and practices; that Mannings and Curtis had been removed from their respective offices pursuant to the bylaws; that Driver was the appointed secretary and Davis treasurer of the church; that Mannings and Curtis have asserted control over religious and business affairs of the church without lawful authority; and that the religious and business affairs of the church would suffer irreparable damage if the acts of defendants were not restrained. The preliminary injunction enjoined defendants from interfering with specific business and religious activities and directed them to surrender certain personal property and bank accounts and not to interfere with the use and occupancy of the church buildings by the plaintiffs.

Defendants filed a motion to dissolve the preliminary injunction and a hearing was commenced on April 14, 1986. Defendant Mannings testified that he was a trustee of the church and was therefore responsible for the financial and physical assets of the church; that Davis, Driver, and Russell May were installed as elders in 1977;

that members of the congregation could object to the selection of elders; and normally the elders would determine whether the objections were in accord with scripture.

On cross-examination Mannings admitted that under section 1 of the bylaws the elders constitute the board of directors. He was aware that the bylaws had been adopted by unanimous vote of the elders on November 13, 1982. He also stated that until the time of the present litigation, he thought the church was organized under the Religious Corporations Act and had only recently learned of the reorganization of a not-for-profit corporation. He further testified that to his knowledge, there had been no meetings pertaining to the dissolution or merger of the original Stony Island Church of Christ and it is still in existence as a religious corporation. When asked if he acted under any written authority in proposing to remove Davis as an elder, he stated that he acted under congregational authority, which was not in writing.

Defendant Curtis' testimony was contradictory as to whether the bylaws were put before the congregation; however, he stated that he did not accept the bylaws. He also testified that no written notice was given to the congregation regarding the meeting to remove Davis as an elder but that both Davis and Driver were removed as elders at the December 22 meeting.

Defendant Woodard testified that he attended various church meetings where the adoption of the bylaws was discussed and that there were objections to the elders having such powers. He also stated that he was familiar with the prior litigation, that at that time the church had only two elders, and that the church had had various numbers of elders but never four since he had become a member.

Charles Dalton, a former minister of the church, testified regarding the historical practices of the church and the adoption of the bylaws. He stated that the bylaws set forth the existing authority of the elders to manage and control the business affairs of the church. According to Dalton, neither biblical authority nor customary practice of the church required that the church have four elders. He stated that the name of any person selected as an elder is put before the congregation and written objections will be received. If the objections are valid, the person could not become an elder. Only elders can discipline elders and many Churches of Christ function with only two elders. A two-man eldership can be dissolved by the action of one elder.

Plaintiff Davis testified that when the bylaws were submitted for

review on November 13, 1982, there were some objections but the majority of the congregation approved them. This testimony was uncontradicted. Davis also testified that Mannings stated that the December 22 meeting was called pursuant to articles 6 and 7 of the bylaws but that he was not given notice of the purpose of the meeting. According to Davis' testimony, there had never been a requirement of four elders. In regard to the incorporation of the church under the GNFPCA, Davis testified that this was done following the prior litigation in order to prevent anyone else from using the church name.

On April 28, 1986, following the hearing, the court granted defendant's motion to vacate the temporary restraining order. Plaintiff's motion for reconsideration was denied and this appeal followed.

■■■ In order for a preliminary injunction to issue, a plaintiff must establish that he possesses: (1) a certain and clearly ascertained right which needs protection; (2) he will suffer irreparable injury without the protection of the injunction; (3) there is no adequate remedy at law for the injury; and (4) plaintiff is likely to be successful on the merits. (*Blue Cross Association v. 666 Lake Shore Drive Association* (1981), 100 Ill. App. 3d 647, 650, 427 N.E.2d 270.) The fourth element need not be satisfied if the subject of the injunction is property which may be destroyed or if the plaintiff seeks only to maintain the status quo until the ultimate issue is decided. (*Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 698, 368 N.E.2d 1010; *Shappert v. Roettger* (1976), 36 Ill. App. 3d 452, 456, 343 N.E.2d 695.) The sole question on an interlocutory appeal is whether the trial court has abused its discretion in granting or denying the preliminary injunction. (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 500, 422 N.E.2d 1166, *appeal denied* (1981), 85 Ill. 2d 563.) Applying these principles to the matter here, we believe that the trial court acted within its discretionary powers in entering the TRO and preliminary injunction.

The preliminary injunction entered on April 7, 1986, contained all of the requisite findings and enjoined the defendants from their unauthorized seizure of control of the religious and business affairs of the church. In their answer, defendants admitted most of the facts upon which the request for the injunction was based, including the allegations that they seized control of the business and religious affairs of the church, the termination of Davis and Driver, and the change in the conduct of church business. In granting the preliminary injunction, the court apparently considered the defenses ten-

dered by defendants and found none of them sufficient to deny the request for the injunction.

■ In order to support a motion to dissolve a preliminary injunction, the defendants had the burden of alleging sufficient grounds to show an abuse of discretion by the court in its entry of the preliminary injunction. (*O'Brien v. Matual* (1957), 14 Ill. App. 2d 173, 144 N.E.2d 446.) In their motion to dissolve the injunction, defendants alleged that the dispute had existed for more than three months, that plaintiffs had failed to allege the requisite property interest or civil right being threatened with irreparable injury, and that plaintiffs had failed to establish their right to preliminary injunctive relief and had acted without the authority of the congregation. None of these allegations served as the basis for dissolving the injunction and all of them had been considered in the prior proceedings or were not relevant.

■ A temporary injunction should not be dissolved because the court may not be absolutely certain the plaintiff has the right he claims. In order to resist a motion to dissolve a temporary injunction, a plaintiff need not make out a case which would entitle him to relief at the final hearing, he need only make a *prima facie* showing that he raises a fair question as to the existence of the right he claims. (*Kraft v. Solon* (1975), 32 Ill. App. 3d 557, 561, 336 N.E.2d 577; *O'Brien v. Matual* (1957), 14 Ill. App. 2d 173, 187-88, 144 N.E.2d 446.) Plaintiffs here have done so.

■ In its memorandum opinion dissolving the TRO and denying the petition for preliminary injunctive relief, the trial court recognized the validity of the church bylaws but found that since the church had been reincorporated under the General Not For Profit Corporation Act (GNFPCA) (Ill. Rev. Stat. 1985, ch. 32, par. 163a *et seq.*), the defendants had standing to assert that the plaintiffs' actions in purporting to act to bind the church were *ultra vires*. The court stated that under the GNFPCA, the elders had the duty to fill the places of the two retired elders and, since the refusal to do so made the acts of the elders *ultra vires*, the court would not approve such actions via a preliminary injunction.

After reviewing the record, we believe that the church was incorporated under the Religious Corporations Act and not, as defendants contend, under the GNFPCA. Although in 1981, following the prior litigation, the elders did file an affidavit of incorporation with the Secretary of State, it appears that they did so for the sole purpose of protecting the church name from unauthorized use. The not-for-profit corporation does no business, issues no funds, keeps no

minutes, and has no bylaws.

Nor did the church follow the procedures for merger or consolidation of a not-for-pecuniary-profit corporation and a religious corporation which would be required to change the corporate status of the church. (See Ill. Rev. Stat. 1985, ch. 32, par. 188a *et seq.*) These procedures include the adoption of resolutions by each corporation prescribing the conditions of merger, notice by mail to each member of the merging corporations, a meeting of each corporation, and a two-thirds vote of the membership of each corporation. A statement of merger must then be filed with the county recorder in the case of a religious corporation.

The bylaws, adopted in November 1982, state that they are the bylaws of the Stony Island Church of Christ, a religious corporation incorporated under the Religious Corporations Act of 1872. They were adopted more than a year after the affidavit of incorporation under the GNFPCA was filed and testimony by both plaintiffs and defendants supports our view that the church was subject only to the provisions of the Religious Corporations Act. We conclude that the trial court erred in dissolving the TRO based on its finding that the church had reincorporated under the GNFPCA.

■ Plaintiffs also challenge the trial court's finding that the elders violated the bylaws by not filling the positions of the two retired elders and therefore, in the absence of a quorum, their removal of defendants as church officers was a nullity. Based on the language of the church bylaws and on review of the record, we conclude that this finding was erroneous. The trial court relied on the provision in article IV which states: "A vacancy in the office of Elder shall be filled by a majority vote of all Elders."

The trial court construed this to impose a duty upon the plaintiffs to select new elders and that their failure to do so was a violation of the bylaws. Undisputed evidence showed that it was not customary for the church to have a specific number of elders. At the time the prior litigation was resolved by this court in 1977, it was determined that the church could function with a minimum of two elders. Since we have found that the church did not reincorporate in 1981 under the GNFPCA (which would have required a minimum of four elders), the prior finding is determinative.

The language of the bylaws relative to selecting new elders does not define a vacancy, nor does it impose a minimum or maximum number of elders to be chosen. Under the bylaws of the church, this matter is left to the discretion of the elders based upon certain religious criteria with which the court may not interfere. (See *Pfeifer v.*

*Christian Science Committee* (1975), 31 Ill. App. 3d 845, 849, 334 N.E.2d 876.) In addition, section 167 of the RCA provides that a failure to elect elders shall not work a dissolution but that "the [elders] last elected shall be considered as in office until their successors are elected." We therefore find that the court erred in vacating the TRO and denying the preliminary injunction based on its finding that the elders violated the bylaws by not replacing the retired elders and that, as a result, their removal of defendants as officers was a nullity.

■ Defendants have cross-appealed from that portion of the trial court's order finding that the congregation lacked the authority to remove the elders from office. Supreme Court Rule 301 provides for the appeal of "final judgments." Our courts have consistently held that a finding upon which no final judgment has been entered is not a final appealable order. *Mobil Oil Corp. v. Hurwitz* (1978), 63 Ill. App. 3d 430, 432, 380 N.E.2d 49; *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 231, 234, 280 N.E.2d 455; *Wilke Metal Products, Inc. v. David Architectural Metals, Inc.* (1965), 55 Ill. App. 2d 34, 36, 204 N.E.2d 35.

Although Supreme Court Rule 307(a)(1) provides for an appeal from an interlocutory order granting or refusing to grant an injunction, the sole function of an appellate court upon review is whether the trial court correctly exercised its discretionary powers. (*Greenspan v. Mesirow* (1985), 138 Ill. App. 3d 294, 300, 485 N.E.2d 1196.) Nothing in Rule 307(a)(1) alters the authorities holding that a finding is not an appealable order. Accordingly, defendant's cross-appeal is dismissed.

One additional matter remains to be resolved. In their motion to dismiss the cross-appeal, plaintiffs moved that costs be assessed against defendant Mannings pursuant to Supreme Court Rule 371 (89 Ill. 2d R. 371.) That motion is denied.

For the reasons set forth, we reverse and remand with directions to reinstate the preliminary injunction.

Reversed and remanded.

CAMPBELL and BUCKLEY, JJ., concur.