**SHEPHERD MALL STATE BANK, Appellant,**

v.

**Michael D. JOHNSON, Appellee.**

**No. 51883.**

Supreme Court of Oklahoma.

Sept. 25, 1979.

---

Laird, Laird & Rauch by Jeff R. Laird, Jr. and Barbara Rauch, Oklahoma City, for appellant.

James H. Harrod and Bennett Schlinke Edmond, for appellee.

HODGES, Justice.

The question presented for determination on appeal is the effect of the execution of a guaranty agreement in blank.

Michael D. Johnson, appellee, on or about December 23, 1974, executed a standard form blank guaranty agreement which on its face had no date, no name of the lending institution to which the guaranty would run, and no debtor's name. The guaranty was executed in the presence of John A. Shannon in return for stock in a corporation in which Johnson was an officer. Shannon was attempting to raise capital for the corporation. The purpose of execution of the blank guaranty was to allow Shannon to obtain a loan for George Richardson from Liberty National Bank where Johnson had been previously employed. The loan was not obtained at the Liberty, and Johnson was notified that the loan had not been obtained in early January of 1975.

A renewal note of $5,000 was issued by Shepherd Mall State Bank (Bank), appellant, to George Richardson, on or about December 30, 1974. The note was guaranteed by Shannon and Johnson although the appellee had no notice or knowledge that the guaranty agreement had been entered into with his signature thereon with Shepherd Mall State Bank until he received a certified letter on March 25, 1976, concerning the execution of the guaranty agree-

ment and default by Richardson.[1] At trial the Bank failed to rebut Johnson's assertions that the guaranty agreement was blank and that the date of execution, the name of the bank, as well as the name of the principal debtor, George D. Richardson, had been added after the guaranty had been signed by Johnson. The testimony shows that: the Bank considered George Richardson the primary party with which it was contracting; the Bank altered the guaranty agreement arrangement and entered into an agreement with Richardson to make monthly payouts on the note; and that the note was a demand note not requiring monthly payments. The president of the Bank also testified that $150.00 per month payments were being received by the Bank up to and including approximately two weeks prior to the time the lawsuit was filed. In March of 1975, the president of the Bank first contacted Johnson regarding the note on which he was the guarantor, and on August 8, 1975, the Bank issued another renewal note to George Richardson with a maturity date of March 15, 1976. On March 15, 1976, the note matured, but payment on the remaining amount was not tendered and Johnson was sent a demand letter concerning the guaranteed note. Thereafter, the Bank filed an action against Richardson as maker and Johnson as guarantor of the note. Richardson confessed judgment, and Johnson was held not liable as guarantor on the note.

**I**

The Bank asserts that the sole issue for determination on appeal is whether a subsequent holder in due course can enforce a standard form blank guaranty agreement against the guarantor of the agreement. The Bank argues that the standard form blank guaranty agreement signed by Johnson is enforceable by the Bank because it is a holder in due course. A holder in due course is a holder who takes an *instrument* for value, in good faith, and without notice that it is overdue, or has been dishonored or of any defense against or claim to it on the part of any person.[2] Pursuant to 12A O.S. 1971 § 3–104, a writing is not a negotiable instrument unless it is signed by the maker or drawer; contains an unconditional promise or order to pay a sum certain and no other promise; is payable on demand or at a definite time; and is payable to order or to bearer.[3] The guaranty agreement contains an unconditional promise to pay all indebtedness which the debtor now is or may hereafter from time to time become obligated to pay, it does not contain a promise to pay a sum certain in money because the amount is adjustable; it is not payable on demand or at a definite time; nor is the document payable to order or to bearer. The guaranty agreement does not meet the applicable statutory definition of a negotiable instrument, therefore, the Bank cannot be a holder in due course.

1. Although the trial court found that appellee did not receive notice of the guaranty being accepted, the guaranty which he signed in blank reflects on its face that it is an absolute guaranty and pursuant to 15 O.S.1971 § 326, an absolute guaranty is binding upon the guarantor without notice of acceptance. See also *Hays v. Smith, 65 Okl. 113, 164 P. 470 (1917)*.

2. See 12A O.S.1971 § 3–302.

3. It is provided by 12A O.S.1971 § 3–104:
   (1) Any writing to be a negotiable instrument within this Article must
   (a) be signed by the maker or drawer; and
   (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

   (c) be payable on demand or at a definite time; and
   (d) be payable to order or to bearer.
   (2) A writing which complies with the requirements of this section is
   (a) a "draft" ("bill of exchange") if it is an order;
   (b) a "check" if it is a draft drawn on a bank and payable on demand;
   (c) a "certificate of deposit" if it is an acknowledgement by a bank of receipt of money with an engagement to repay it;
   (d) a "note" if it is a promise other than a certificate of deposit.
   (3) As used in other Articles of this Act, and as the context may require, the terms "draft", "check", "certificate of deposit" and "note" may refer to instruments which are not negotiable within this Article as well as to instruments which are so negotiable.

## II

██ In addition, the guaranty agreement was not attached to the note. A guaranty may have the effect of an indorsement where it is written on the instrument itself, or upon a paper attached thereto, or so firmly affixed as to become a part thereof.[4] This attachment is an allonge, and its use is recognized where the instrument is so covered with previous indorsements that additional space is required. A writing not on the instrument itself or on an allonge, but on a separate unattached paper is not an indorsement; is not sufficient for negotiation, or to confer the rights of an indorsee or to impose liability of an indorser.[5] Where a guaranty is written on a separate piece of paper, it is merely a guaranty and does not have the effect of an indorsement.[6] The Bank was not a holder in due course because a separate guaranty agreement is not a negotiable instrument.

The Bank urges the application of 12A O.S.1971 § 3–115,[7] and argues that, although the guaranty was incomplete when it was signed, when it was completed in accordance with the authority given, the instrument becomes effective and enforceable. The evidence reflects that the completion was authorized only to guarantee a loan from the Liberty National Bank. It is provided by § 3–115 that if the completion is unauthorized, the rules of material alteration as set forth by 12A O.S.1971 § 3–407[8] are applicable, and the instrument may be completed by a subsequent holder in due course. Neither of these statutes are pertinent because in order to be a negotiable instrument under the code, the document must precisely meet the UCC definition of instrument under 12A O.S.1971 § 3–104, as previously discussed.

AFFIRMED.

All the Justices concur.

---

4. It is provided by 12A O.S.1971 § 3–202(2): An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

5. 2 R. Anderson, "Uniform Commercial Code," p. 767, § 3–202.24 (2nd ed. 1971).

6. 2 R. Anderson, "Uniform Code," p. 766, § 3–202.18 (2nd ed. 1971). A similar question was considered in *Healthco, Inc. v. Zambelis, 2 Mass.App. 914, 321 N.E.2d 671 (1975)* where the contract of guaranty appeared on the back of a carbon copy of the note but not on any part of the original. The Massachusetts Court of Appeals held that the guaranty could not pass to the plaintiff as the holder of the note by the original payee's indorsement and negotiation of the note, but that it could be transferred by common law assignment.

7. The UCC provides in 12A O.S.1971 § 3–115: (1) When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed. (2) If the completion is unauthorized the rules as to material alteration apply (Section 3–407), even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting.

8. The principles concerning material alterations of instruments are delineated by 12A O.S.1971 § 3–407: (1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in (a) the number of relations of the parties; or (b) an incomplete instrument, by completing it otherwise than as authorized; or (c) the writing as signed, by adding to it or by removing any part of it. (2) As against any person other than a subsequent holder in due course (a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense; (b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given. (3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed.