**UNITED SAVINGS & LOAN ASSOCIATION, Plaintiff–Appellant,**

v.

**LAKE OF THE OZARKS WATER FESTIVAL, INC., and David L. Jones, Defendants,**

and

**Clarence Hawk and Rod Orr, Defendants–Respondents.**

No. 16959.

Missouri Court of Appeals,
Southern District,
Division Two.

March 13, 1991.

Orr and Hawk. Under Rule 81.05 [1] a judgment becomes final at the expiration of 30 days after the entry of such judgment, if no timely motion for a new trial is filed; no timely motion for a new trial was filed by United; the summary judgment became final on March 15, 1990; under Rule 81.04(a) the notice of appeal must be filed not later than 10 days after the judgment or order appealed from becomes final; United failed to file its notice of appeal until May 2, 1990, which was approximately 39 days late.

For the reasons which follow, this court finds no merit in respondents' motion and it is denied.

The order of February 13, 1990, was not appealable because it contained no express determination "that there is no just reason for delay." In the absence of such a determination, any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or order form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Rule 74.01(b). No final judgment was entered until March 23, 1990, and United timely processed its appeal from the judgment entered on that date.

On its appeal, United contends that the trial court erred in sustaining Orr and Hawk's motion for summary judgment, for reasons to be discussed.

United's petition was in four counts, each directed against only one defendant. Count I, against Ozarks, sought recovery on a note dated August 9, 1985, (Exhibit A), which Ozarks executed and delivered to United, along with a Line of Credit Agreement (Exhibit B), of the same date. Count I alleged that the note was due and unpaid, and recovery was sought pursuant to its terms. United advanced to Ozarks the sums represented by the note pursuant to the line of credit agreement.

Joseph C. Benage, Matthew B. Woods, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, for plaintiff-appellant.

Kerry Rowden, Hawk & Associates, Osage Beach, for defendants-respondents.

FLANIGAN, Chief Judge.

Plaintiff United Savings & Loan Association, (United), brought this action against Lake of the Ozarks Water Festival, Inc., a Missouri corporation, (Ozarks), Rod Orr, Clarence W. Hawk and David L. Jones. Defendants Orr and Hawk filed a motion for summary judgment. On February 13, 1990, the trial court entered an order sustaining Orr and Hawk's motion. On March 23, 1990, the trial court entered its judgment disposing of the case with respect to defendants Ozarks and Jones. United filed its notice of appeal on May 2, 1990.

In this court, Orr and Hawk filed a motion to dismiss United's appeal as untimely. The motion recites, in essence: On February 13, 1990, the trial court entered a summary judgment in favor of respondents

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

Count II, against Orr, incorporated the allegations of Count I, and alleged that on August 9, 1985, Orr executed and delivered to United a guaranty (Exhibit C) pursuant to which Orr guaranteed the full and prompt performance by Ozarks of Ozarks' obligations to United. Count II further alleged that Ozarks' note was in default and sought recovery of the amount due thereon.

Count III, against Hawk, incorporated the allegations of Count I and Count II and alleged that on August 9, 1985, Hawk executed and delivered to United his guaranty (Exhibit D). Count III made similar allegations against Hawk which Count II made against Orr, and sought similar relief.

Count IV, against Jones, was disposed of by the judgment of March 23, 1990, and is not involved here.

The motion for summary judgment, filed by Orr and Hawk, was based on the following grounds: Exhibits A, B, C and D, attached to the petition, "were signed by Orr and Hawk in their capacity as agents and officers of [Ozarks]," and not in their personal capacities; neither Orr nor Hawk used the funds personally; all funds were placed in Ozarks' corporate account and used solely for corporate business; "the agreement is clear and unambiguous. Both Orr and Hawk signed as agents of [Ozarks] and there was no second signature to hold them responsible"; "to hold [Orr and Hawk] liable on a guaranty, they must sign the document twice, once in their official capacity and once individually."

None of the parties questions the fact that Exhibit A, the note, and Exhibit B, the Line of Credit Agreement, were properly executed by Ozarks. Each of those documents was signed as follows:

Lake of the Ozarks Water Festival, Inc.

/s/ Rod Orr

Rod Orr, President

/s/ Clarence W. Hawk

Clarence Hawk, Secy/Treas.

**2.** Neither side mentions the fact that "L.O.W.F., Inc." and "LOWF, Inc.," rather than Lake of the Ozarks Water Festival, Inc., are used in the

Exhibit C, the "Orr guaranty," opens with the following language:

"Guaranty

To: United Savings and Loan Association Second and Jefferson Lebanon, MO 65536

This Guarantee made this 9th day of August, 1985, by and between you and Rod Orr, President, L.O.W.F., Inc. (Hereinafter, 'The Guarantor') is as follows:"

It is signed in the following manner:

/s/ Rod Orr, President

Rod Orr

The words "President, L.O.W.F., Inc." in the opening, and the word "President" on the signature line, were handwritten in ink.

Exhibit D, the Hawk guaranty, opens in the following manner:

"Guaranty

To: United Savings and Loan Association Second and Jefferson Lebanon, MO 65536

This Guarantee made this 9th day of August, 1985, by and between you and Clarence Hawk, Secretary, L.O.W.F., Inc., (Hereinafter 'The Guarantor') is as follows:"

It's signature line is as follows:

/s/ Clarence Hawk

Clarence Hawk, Sec.

LOWF, Inc.

The words "Secretary, L.O.W.F., Inc." in the opening, and the words "Sec. LOWF, Inc." in the signature line, were handwritten in ink.[2]

Exhibit A, Ozarks' note, contains the following: "Security: This note is secured by: personal and corporate guarantees." The first six words of that provision are printed and the last four words are typewritten.

In response to respondents' motion for summary judgment, United filed the affidavit of Sherry Jones. That affidavit recited, in pertinent part:

"1. I am an Assistant Vice President and a loan officer for [United].

quoted portions of Exhibits C and D. Thus, this court does not inquire into the significance, if any, of that fact.

2. I have personal knowledge of the loan transaction underlying the subject matter of this action (the 'loan'), and am custodian of the business records concerning such loan.

3. Also attached and incorporated herein by reference is Exhibit 'E'[3] denoted Guaranty of Corporation (the 'corporate guarantee') made, executed and delivered by defendants Orr and Hawk, respectively, in their capacities as President and Secretary/Treasurer, of the defendant Lake of the Ozarks Water Festival, Inc. ('Ozarks').

4. United provided the corporate guarantee to the defendant Hawk, Orr and Jones, along with other personal guarantees intended to be signed by Hawk, Orr and Jones as personal guarantees. United's intent in making the loan of $10,000.00 to defendant Ozarks was to procure the personal guarantees of the defendants Hawk, Orr and Jones, which it did, in addition to the corporate guarantee and would not have made the loan to Ozarks had these personal guarantees not been obtained."

Exhibit E, also dated August 9, 1985, is entitled "Guaranty by Corporation," and it is executed by Ozarks in the same manner as Exhibits A and B.

United contends that the trial court erred in sustaining Orr and Hawk's motion for summary judgment because: (a) the Orr and Hawk guaranties are unambiguous personal guaranties; and (b) the Orr and Hawk guaranties are ambiguous on their face or, alternatively, the pleadings and affidavits show that when the loan documents, including the guaranties of Orr and Hawk, are viewed together as an entire transaction, an ambiguity exists with regard to whether Orr and Hawk signed the guaranties in a personal or representative capacity.

"On review of defendants' motion for summary judgment, this Court must view the record in the light most favorable to the plaintiffs, according to plaintiffs all reasonable inferences which may be drawn from the evidence. Summary judgment is inappropriate unless the defendants have shown by unassailable proof that they are entitled to judgment as a matter of law. The burden is on the defendants to demonstrate that there are no genuine issues of material fact. A genuine issue of fact exists when there is the slightest doubt about a fact."

*Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988).

■ A guaranty is a collateral agreement for performance of an undertaking of another, and it imports two different obligations, that of the principal debtor and of the guarantor. *Mobil Oil Corp. v. Days*, 618 S.W.2d 286 (Mo.App.1981). A guaranty contract is by its very nature a separate, independent agreement which imposes different responsibilities than those imposed in the contract to which it is collateral. *Four–Three–O–Six Duncan Corp. v. Security Trust Co.*, 372 S.W.2d 16 (Mo.1963). Although a contract of guaranty requires consideration, it is not necessary that the guarantor derive any benefit from either the principal contract or the guaranty. *Don L. Tullis & Associates, Inc. v. Gover*, 577 S.W.2d 891, 896 (Mo.App.1979). Benefit to a third person, a detriment to a promisee, or a change in the promisee's relations in consequence of the promise is sufficient consideration to render the promisor obligated under a guaranty agreement. *Id.*

■ The brief of appellant relies in part upon § 403.3–403(2)(b), which is a portion of § 3–403 of the Uniform Commercial Code and is contained in Article 3 of that code. The brief of respondents also cites a section of Article 3 of the Uniform Commercial Code. These citations are not applicable.

Section 400.3–403, and other provisions of Article 3, including § 400.3–606, deal with liability of parties to an instrument, including an instrument bearing the signature of an authorized agent or other representative. The word "instrument," as used in § 400.3–403, means a negotiable instru-

---

**3.** Although the described guaranty was attached to the Jones affidavit, it was not identified as Exhibit E. For simplicity, that identification is used in this opinion.

ment. § 400.3–102(1)(e). The requirements for a writing to be a negotiable instrument are set forth in § 400.3–104(1). Among those requirements are that the writing:

> (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and
>
> (c) be payable on demand or at a definite time; and
>
> (d) be payable to order or to bearer.

Neither Exhibit C, the Orr guaranty, nor Exhibit D, the Hawk guaranty, meets any of those requirements. A continuing guaranty, which is the type involved here, is not an instrument within the meaning of Article 3 of the Uniform Commercial Code, thus rendering inapplicable § 3–403 or § 3–606 of that article. *First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127, 1134[7] (10th Cir.1987); *Associates Discount Corporation v. Elgin Organ Center, Inc.*, 375 F.2d 97, 99[2] (7th Cir.1967); *King v. Industrial Bank of Washington*, 474 A.2d 151, 154–155[1] (D.C.App.1984); *Federal Deposit Ins. Corp. v. Hardt*, 646 F.Supp. 209, 211–212 (C.D.Ill.1986); *Halpin v. Frankenberger*, 231 Kan. 344, 644 P.2d 452, 456[2] (1982); *Ishak v. Elgin Nat. Bank*, 48 Ill.App.3d 614, 6 Ill.Dec. 630, 632, 363 N.E.2d 159, 161[2] (1977); *Kordick v. Merchants Nat. Bank and Trust Co.*, 496 N.E.2d 119, 123[1] (Ind.App.1986); *Shepherd Mall St. Bank v. Johnson*, 603 P.2d 1115, 1117[1] (Okl.1979). In *Shepherd Mall St. Bank*, at 1118, the court pointed out that the situation might be different if the guaranty is written on an instrument or on a paper attached or firmly affixed thereto, which is not the situation here.

■ It is necessary to examine Missouri case law dealing with ordinary contracts and not Article 3 of the Uniform Commercial Code.

> "The general rule regarding liability incurred by an individual who signs an instrument on behalf of another party is: where the principal is disclosed and the capacity in which the individual signs is evident, e.g., president, secretary, agent, the liability is the principal's and not the individual signing for the principal.... 'The presumption, in such cases, is, that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound.' ... Of course, where the circumstances surrounding the transaction disclose a mutual intention to impose personal responsibility on the individual executing the agreement, the individual may be personally liable even though the form of the signature is that of the agent." (Citing authorities.)

*Wired Music, Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466, 468–469 (Mo.App. 1977).

In *Wired Music, Inc. v. Wiemann*, 468 S.W.2d 668, 670–671 (Mo.App.1971), a case dealing with a written contract which was not a negotiable instrument, the court said:

> "Although neither § 401.020 cited by plaintiff or § 400.3–403 of the Uniform Commercial Code it replaced are applicable, since the instant agreement is not a negotiable instrument, similar rules govern the execution of a contract. Restatement of the Law of Agency, 2nd Ed., Section 322; *Kraehe v. Dorsey*, Mo.App., 432 S.W.2d 367."

In *McArthur v. Fruit Supply Co.*, 191 S.W. 1126, 1127 (Mo.App.1917), the court said:

> "Where an agent undertakes to execute a simple contract for his principal, the most approved manner of affixing the signature is for the agent to sign the name of the principal by himself as agent.... Many courts, including our own, have held, broadly speaking, that by the addition, to the name of the signer, of words indicating that he signed in an official or a representative capacity, an ambiguity may be created which it is proper to explain by parol. See *Cockrell v. Williams*, 191 Mo.App. [246] loc.cit. 249, 250, 177 S.W. 1091."

In *Hartzell v. Crumb*, 90 Mo. 629, 3 S.W. 59 (1887), an action on a contract, the court said: "If the instrument is so uncertain in its terms as to throw the whole matter in

doubt whether the principal or agent is to be held bound, such uncertainty may be obviated by the introduction of parol testimony." To similar effect see *Klostermann, Adm'r v. Loos*, 58 Mo. 290, 293–294 (1874).

In *Sparks v. Despatch Transfer Co.*, 104 Mo. 531, 15 S.W. 417, 420 (1891), referring to an earlier case, the court said:

"In *Smith v. Alexander*, 31 Mo. 193, the action was on the following note: '$500. St. Louis, Mo., July 22, 1855. Ninety days after date I promise to pay to the order of Messrs. Smith & Co., five hundred dollars, for value received, negotiable and payable without defalcation or discount. J.H. Alexander, Treasr. Ohio & Miss. R.R. Co.' In that case Alexander, having been sued on this note, was allowed to show that he was treasurer of the said railroad, and that he gave the note simply as agent of said company. Judge Ewing saying: 'A mere addition to the name of the party signing the contract cannot be regarded as a certain indicium that it was made on behalf of another. Where, however, it is doubtful from the face of the contract whether it was intended to operate as a personal engagement of the party signing it or to impose an obligation on some third person as principal, evidence is admissible to show the character of the transaction.' So we see that Judge Ewing places his ruling on the doubt appearing on the face of the note, whether it was the obligation of Alexander or the railroad company."

In *Receivables Finance Corporation v. Hamilton*, 408 S.W.2d 44, 46 (Mo.1966), a suit on three trade acceptances, the court said:

"Some courts have held, on signatures of widely varying types, that the instruments were ambiguous, and that parol evidence should be admitted to ascertain the real intent of the parties.... But it is very generally held that, in order to create such an ambiguity, there must be something more than the mere addition of abbreviations such as 'Pres.,' 'Sec'y.,' or 'Treas.,' and usually the corporate name must appear in some manner on the instrument itself in order to permit such evidence." (Citing authorities.)

In *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592 (Mo.App. 1977), plaintiff sued Taco Kid of Springfield, Inc., a corporation, and two alleged guarantors, Van Eaton and Scanlon. The trial court found in favor of plaintiff and against the corporation but exonerated the guarantors. On appeal by the plaintiff, this court reversed and remanded with directions to the trial court to enter judgment in favor of plaintiff and against the guarantors.

Van Eaton signed the guaranty as follows: "W.C. Van Eaton president of Taco Kid of Springfield Mo, Inc." Scanlon signed the guaranty as follows: "R. C. Scanlon– Pres." Van Eaton and Scanlon were shareholders and directors of the corporation. Van Eaton was the president and Scanlon had "acted as president." At 595–596 the court said:

"The guaranty side of the forms were, as directed, completed and signed by principals of Taco. Both undertook to guarantee to plaintiff the payment of 'such sums of money as may at anytime hereafter [in futuro] become due and owing to [plaintiff] on account of sales to Taco.' There was no ambiguity in the guaranty contracts unless it can be rightfully said that writing 'Pres.' or 'President of Taco Kid' after the signatures of Scanlon and Van Eaton engendered ambiguity. We think not. The preface to the forms specified the guaranties were to be completed by 'a principal of the business', and the addition of a title which identified the signatories as principals of the corporation was merely descriptio personae. Obviously there was no attempt to execute the guaranties for or on behalf of the corporation. Also, there was no manifestation of the part of the signatories to enter into a contract between plaintiff and the corporate entity as was the situation in *Wired Music, Inc. of The Great Midwest v. Great River Steam Boat Company*, 554 S.W.2d 466 (Mo.App. filed June 14, 1977)."

The court also pointed out that if a guaranty contract signed individually by a principal of the corporation was construed to be the corporation's guaranty of its own contract, it would be "redundant, illusory, absurd, and therefore unreasonable." [4]

*Wired Music, Inc. v. Great River Steamboat Co.,* supra, relied on by respondents, is distinguishable. There the contract contained this provision: "The individual signing this agreement for the subscriber guarantees that all of the above provisions shall be complied with." The issue on appeal was whether Pierson was personally liable under the foregoing provision.

The contract was executed in the following manner:

"By /s/ Frank C. Pierson, Pres.

Title

The Great River Steamboat Co.

~~Port of St. Louis Investments, Inc.~~

For the Corporation"

In signing, Pierson crossed out "Port of St. Louis Investments, Inc." which had been incorrectly listed as the name of the corporation and inserted the proper name.

At 469 the court said:

"The determinative issue here is whether, in view of the form of the signature to the agreement, the language of the so called guaranty clause is sufficient to manifest a clear and explicit intent by Pierson to assume a personal guaranty contract.... We hold that standing alone it does not. Furthermore, the contract language imposing a personal obligation is inconsistent with the form of execution which positively interdicted Pierson's participation to his official cor-

porate capacity and not as an individual. Such inconsistency creates at least a latent ambiguity which permits the admission of parol evidence to explain the true intent of the parties." (Citing authorities.)

At 470–471 the court said:

"We therefore adopt the policy that in order to hold a corporate officer individually liable in signing a contract of guaranty, as in this case, the officer should sign the contract twice—once in his corporate capacity and once in his individual capacity. If the parties have mutually agreed and intended that the officer executing the contract for his corporation is to assume personal obligations thereunder, the simple but unequivocal act of manifesting such intent can be accomplished by having the officer also sign in his individual capacity. Such practice, in addition to making the guaranty agreement explicit, would promote the policies behind the statute of frauds."

The court said that there was no evidence that Pierson explicitly intended a personal guaranty and that the trial court properly directed a judgment for Pierson.

The foregoing case is distinguishable from the case at bar. The contract there sued on was the only one involved. Pierson, as president of the Great River Steamboat Co., signed the contract "for the corporation." He did not sign it in his individual capacity. In the case at bar, the two guaranties were executed on the same date as three other documents (Exhibits A, B and E) were executed. The latter three exhibits were clearly executed by Ozarks through its authorized representatives Orr and Hawk.

4. In 70 A.L.R.3d 1276 there is an annotation on "Admissibility of Parol Evidence to Show Whether Guaranty of Corporation's Obligation was Signed in Officer's Representative or Individual Capacity." There it is said, at 1279–1280:

"[I]t commonly has been held that parol evidence is admissible to show whether a guaranty of a corporation's obligation was signed in an officer's representative or individual capacity, where, but only where, the guaranty instrument is ambiguous on the question.... A number of cases have taken

the position, as a general matter, that no such ambiguity exists where a corporate officer signs a guaranty of the corporation's obligation. They reason that since a guaranty signed in a representative capacity would be meaningless, in that it would add nothing to the creditor's security to have the corporation through its officer guarantee an obligation on which the corporation already was bound, it was clear that the intention was to bind the officer personally."

In *Reese v. First Mo. Bank & Trust Co.*, 664 S.W.2d 530 (Mo.App.1983), four documents were executed on the same date by the same parties. The court said, at 535:

"Even if the four March 6 documents be viewed in a non-UCC setting, this court, in determining the intent of the parties, considers 'the entire instrument, subsidiary agreements between the parties, and external circumstances which cast light on the intent.' *Tri–State Gas Co. v. Kansas City Southern Railway Co.*, 484 S.W.2d 252, 254[3] (Mo.1972). 'When there is more than one instrument, as here, we must construe them together ... and contradictions must be harmonized if reasonably possible.' *Structural Systems, Inc. v. Hereford*, 564 S.W.2d 62, 66 (Mo.App.1978). See also *Local Acceptance Co. v. Kinkade*, 361 S.W.2d 830, 833[3] (Mo. banc 1962)."

Section 323 of the Restatement of Agency, Second, provides, in pertinent part:

"§ 323. Integrated Contracts

(1) If it appears unambiguously in an integrated contract that the agent is a party or is not a party, extrinsic evidence is not admissible to show a contrary intent, except for the purpose of reforming the contract.

(2) If the fact of agency appears in an integrated contract, not sealed or negotiable, and there is no unambiguous expression of an intention either to make the agent a party thereto or not to make him a party thereto, extrinsic evidence can be introduced to show the intention of the parties."

Illustration 3 of § 323 reads:

"3. An unsealed contract for the sale of goods is executed, the contracting parties being described as A and T in the body of the instrument. A signs 'A, agent for P.' Either A or T can introduce evidence to prove the agreement that A should or should not be a party."

Ozarks executed the note (Exhibit A), the Line of Credit Agreement (Exhibit B), and the guaranty of the corporation (Exhibit E). Under respondents' theory, Exhibits C and D are merely additional guaranties of Ozarks. To accept that argument is to hold that Ozarks executed three superfluous guaranties to secure its own obligation. The argument also ignores the fact that Exhibit A contains a recital that it is secured "by personal and corporate guaranties."

United did not file a motion for summary judgment, and this court expresses no opinion on the merits of such a motion had one been filed. It is sufficient to hold that, at the very least, an ambiguity exists permitting the introduction of parol evidence to show whether Orr and Hawk, in executing Exhibits C and D respectively, did so in their personal capacities. The burden was on Orr and Hawk to demonstrate that there were "no genuine issues of material fact." *Madden*, supra. That burden was not met and the trial court erred in sustaining their motion for summary judgment.

The judgment is reversed and the cause remanded.

HOGAN and SHRUM, JJ., concur.

PARRISH, P.J., recuses.

