HAINES PIPELINE CONSTRUCTION,
INC., Plaintiff,

v.

EXLINE GAS SYSTEMS,
INC., Appellant,

and

Federal Deposit Insurance Corporation, as liquidating agent of Security Bank & Trust Company of Midwest City, Appellee,

and

UNITED OKLAHOMA BANK, a
State Corporation, Plaintiff,

v.

Ted MOSS, an Individual; Ted Moss d/b/a Moss Lawson Industries, and Exline Gas Systems, Inc., Appellants.

No. 78332.

Court of Appeals of Oklahoma,
Division No. 3.

June 11, 1996.

See also: 793 P.2d 1359.

Fred S. Morgan and Richard D. Herren, Reynolds, Ridings, Vogt & Morgan, Oklahoma City, for Appellee, FDIC.

## OPINION

### ADAMS, Vice Chief Judge:

This appeal arises from a trial court summary adjudication order in favor of Appellee Federal Deposit Insurance Corporation (FDIC) on a note executed by Appellant Exline Gas Systems, Inc. (Exline) and its president, Ted Moss. In addition, the trial court also granted judgment against Moss on various guaranties which FDIC claimed he had executed to guarantee that debt. Exline and Moss contend the trial court erroneously entered summary judgment in favor of the FDIC because Exline and Moss were entitled to judgment as a matter of law, or, at the least, issues of controverted fact precluded summary judgment for FDIC.

### Standard of Review

Summary judgment must be based upon the unique facts and record of each case, and, if reasonable minds in the exercise of fair and impartial judgment might reach different conclusions, should be denied. *Northrip v. Montgomery Ward & Co.*, 529 P.2d 489 (Okla.1974). We must examine the pleadings and evidentiary material submitted to the trial court and view all inferences and conclusions that can be drawn therefrom in the light most favorable to the party opposing the motion. *Johnson v. Mid–South Sports, Inc.*, 806 P.2d 1107 (Okla.1991). Any ruling on a motion for summary judgment must be made on the record actually presented and not on the record potentially possible. *Anderson v. Falcon Drilling Co.*, 695 P.2d 521 (Okla.1985). The evidence of a controverted fact precluding summary judgment may be either presented by the party opposing the motion or shown to exist in the movant's own evidentiary materials. *Hadnot v. Shaw*, 826 P.2d 978 (Okla.1992).

## FACTS

Most of the material facts are undisputed. On October 11, 1983, Ted Moss, as chairman of Exline, signed a $299,000 note in favor of Security Bank & Trust Company of Midwest City (Security). That same day, Moss also signed a guaranty of that note. On June 12, 1984, Moss signed a $611,000 note, both individually and as chairman of Exline, and a guaranty of the note. The $611,000 note was secured by a mortgage on a gas gathering system.

Haines Pipeline Construction, Inc. (Haines), who had supplied labor and materials used in the construction of the gas gathering system, filed an action on October 12, 1984, against Exline, Security, and United Oklahoma Bank to foreclose a mechanic's and/or materialman's lien. Moss was not named as a party. Security entered an appearance in November 1984 and filed an answer in December 1984. In its answer, Security alleged it had an interest in rights of way assigned to Exline and held a mortgage for $299,000. Haines received judgment on its lien on July 8, 1985.

While Haines' suit was pending, Security experienced fiscal difficulties. FDIC was appointed as its receiver in August 1985 and acquired all of Security's assets. In addition to filing a cross-petition and counterclaims in the Haines lawsuit, United Oklahoma Bank filed a separate lawsuit against Moss, Exline, Security, and several other persons and business entities on May 20, 1985. The FDIC also became the receiver of and successor to United Oklahoma Bank while the actions were pending, as well as serving as liquidating agent for another bank involved in the United Oklahoma Bank lawsuit.[1]

On October 7, 1985, FDIC filed an amended answer, cross-petition and counterclaim based on the notes, mortgages, and guaranty documents acquired from Security in the United Oklahoma Bank lawsuit. FDIC sought to foreclose the mortgage on the gas gathering system and appended in support of

---

1. No debt owed by Moss or Exline to United Oklahoma Bank is at issue in this appeal, and the priority of the liens held by Haines, Security, and United Oklahoma Bank were stipulated to by the parties.

its claims copies of notes and guaranties. Although the text refers to both a guaranty of the $611,000 note (designated Exhibit G) *and* an unlimited guaranty (designated Exhibit J) both allegedly executed by Moss on June 12, 1984, only the unlimited guaranty appears among the unlabeled pages attached to the answer, cross-petition and counterclaim.

The judgment granted Haines on July 8, 1985, was corrected in an order entered June 20, 1986, and a special execution and order of sale was entered that same day. The gas gathering system which secured Security's mortgage was sold at a sheriff's sale on August 12, 1986. The sale was confirmed. Haines received a portion of the sales proceeds and filed a release and satisfaction of judgment on August 22, 1986. In November 1990, the Haines and United Oklahoma Bank lawsuits were consolidated. Subsequently, on January 22, 1991, the trial court ordered $4,006.41 left from the 1986 "sheriff's sale of the Exline Pipeline" paid to FDIC. FDIC's acknowledgment of receipt of the funds was filed on February 4, 1991.

On February 7, 1991, FDIC filed a motion seeking summary judgment against Exline and Moss. FDIC claimed Moss had executed the $611,000 note, the $299,000 note, a limited personal guaranty of the $299,000 note (guaranty # 1), a limited personal guaranty of the $611,000 note dated June 12, 1984 (guaranty # 2), and an unlimited personal guaranty, also dated June 12, 1984 (guaranty # 3). FDIC attached copies of the first three documents to its motion and supported its claim of an unlimited guaranty by an affidavit by an FDIC account officer. A copy of guaranty # 3 was not attached to the motion. FDIC argued no personal defenses could be asserted by Appellants because FDIC was a holder in due course and any affirmative defenses arising from alleged lack of funding of a line of credit were barred by the doctrine established in *D'Oench, Duhme & Company v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), which has been codified as 12 U.S.C. § 1823(e).

Moss moved for summary judgment in his favor on February 11, 1991, arguing that the $299,000 note and a November 26, 1983 personal note for $211,000 had been altered after execution and that he had no knowledge of these alterations when he signed the $611,000 note. Moss claimed that the $611,000 note was a renewal of the $299,000 note plus a new credit line, but it had been altered after execution by adding the renewal of the November 26, 1983 note to its terms, thus converting Moss' personal debt into one owed by Exline. Moss admitted executing guaranty # 2 but denied executing guaranty # 3. Rather, Moss maintained that guaranty # 3 resulted from a material alteration of guaranty # 2 by the obliteration of the limitation of liability to $611,000. He argued the alteration rendered the instrument void under 15 O.S.1981 § 239.

On February 25, 1991, Appellants filed their response to FDIC's motion, arguing any liability on the $611,000 note was extinguished and deemed satisfied by FDIC's failure to secure a timely deficiency judgment, that FDIC could not be a holder in due course of a guaranty because a guaranty is not a negotiable instrument, and that guaranty # 1 was not the same document upon which FDIC based its original claim. Appellants note that guaranty # 1 contains different terms, has a different form date, and lacks witness signatures which appear on the one attached to the amended answer, cross-petition, and counterclaim filed on October 7, 1985 (guaranty # 4). According to Moss, he signed guaranty # 4 but guaranty # 1 was an alteration of guaranty # 4 and/or a forgery. Appellants argued that their defenses were real defenses, not personal defenses, and the guaranties were void before FDIC acquired them.

After initially denying FDIC's motion, on June 19, 1991, the trial court entered judgment for FDIC against both Appellants, holding that all of the defenses raised by Exline and Moss were either invalid as a matter of law or were barred because the FDIC was a holder in due course of the notes and guaranties under federal common law. After the trial court denied Appellants' new trial motion, they filed this appeal.

## ANALYSIS

### Statute of Limitations

■ Moss argues that any suit based upon guaranty # 1, guaranty # 4, and guaranty # 3 should be time-barred because claims based on those documents were raised for the first time with the filing of FDIC's motion for summary judgment in 1991. We need not determine whether this argument has merit because its premise, *i.e.*, FDIC did not reference these documents in its previously filed claims, is not supported by the record.

As noted above, the record shows that FDIC identified an October 11, 1983 guaranty, a June 12, 1984 guaranty and a June 12, 1984 unlimited guaranty as a basis for recovery in 1985 when it filed its amended answer, counterclaim, and cross-petition in the United Oklahoma Bank lawsuit. That pleading is a part of the consolidated record. The FDIC's motion for summary judgment based on these documents was filed *after* consolidation of the two lawsuits. Hence, a failure to earlier also raise those documents as a basis of recovery in the Haines lawsuit is irrelevant. As a matter of law, FDIC's claim on the guaranties is not barred by the statute of limitations.

### Application of 12 O.S.1991 § 686

■ Because FDIC did not timely request a deficiency judgment in the Haines lawsuit, Appellants argue that any debt owed FDIC was deemed satisfied under the provisions of 12 O.S.1991 § 686 which provides:

[N]o judgment shall be enforced or any residue of the debt remaining unsatisfied as prescribed by this Act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action.... If no motion for a deficiency shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.

FDIC did not seek a determination of the amount still owed until it filed the motion for summary judgment in 1991, which was clearly more than ninety days past the 1986 sheriff's sale.

■ FDIC argues § 686 does not apply because it did not seek a judgment against Appellants until it filed its motion for summary judgment. As we noted in *Bank of Oklahoma, N.A. v. Welco, Inc.*, 898 P.2d 172 (Okla.App.1995), once FDIC became a party to the Haines lawsuit, § 686 required FDIC to litigate its entire cause of action in that proceeding and to obtain a deficiency judgment. "[O]nce a creditor is made a party to a foreclosure action it must proceed therein until the validity and priority of its lien is adjudicated and the amount of the debt which its lien secures is determined." *Welco*, 898 P.2d at 177. When FDIC failed to ask for a deficiency judgment within the time allowed by § 686, its claim on the note was deemed satisfied as a matter of law.

■ Surely, as FDIC claims, until it became a party to the Haines lawsuit, it had the right to sue separately on its note rather than seeking foreclosure. However, that is not what occurred in this case, and we must address the case as it is, not as it theoretically might have been conducted. Section 686 directs that no judgment "for any residue of the debt remaining unsatisfied" will be enforceable unless a deficiency judgment is sought within 90 days of the sale. In filing for summary judgment in its favor, FDIC sought to recover the full face amount of its note for the debt which remained unsatisfied after the sheriff's sale of the gas gathering system, but that effort came too late. As to Exline, whose liability to FDIC is premised solely upon the note and mortgage (not a guaranty), FDIC's failure to timely seek a deficiency judgment after the sale of the mortgaged premises operated to satisfy Exline's debt. Similarly, Moss' individual liability as a *maker* of the note also was deemed

satisfied when FDIC did not timely secure a deficiency judgment against him *in person-am.*

 However, different considerations apply to Moss' liability premised on his guaranty agreements. FDIC's failure to preserve its rights on the $611,000 note does not automatically release Moss from any liability on his guaranty. *See Riverside National Bank v. Manolakis,* 613 P.2d 438 (Okla.1980). Rather, as in *Riverside,* we must look to the language of the guaranty to determine whether Moss waived his defenses under 15 O.S.1981 § 338.[2] All of the guaranties allegedly executed by Moss, including guaranty # 4, which he admitted signing[3], contained language which can only be understood as waiving any right to be exonerated by the failure of the creditor to pursue remedies against the principal debtor. In executing a guaranty with such language, Moss waived his right to claim exoneration from his guaranty-based liability because of FDIC's failure to comply with § 686.

Under the applicable law, the uncontroverted facts are consistent only with the conclusion that any liability of Exline and Moss as makers of the note has been deemed satisfied under § 686. Similarly, those facts are consistent only with the conclusion that Moss is still liable under any of these guaranties which may be determined to be valid.

### Guaranty Defenses

 Moss admits he signed two guaranties, guaranty # 2 and guaranty # 4. However, he contends that his liability under those guaranties has been extinguished under 15 O.S.1981 § 239 because they were materially altered after he executed them,

resulting in guaranty # 3 and guaranty # 1.[4] FDIC did not respond to any of the evidentiary material presented by Moss to support his claim of material alteration. Rather, FDIC chose to rely on its claim that the material alteration defense was not available against it because, according to FDIC, material alteration is a personal defense and is not available against a holder in due course.

First, we note that Moss' claim that guaranty # 1 resulted from an alteration of guaranty # 4 is inconsistent with the physical appearance of the two documents. Guaranty # 4, which Moss admits he signed, was typed on a preprinted form bearing a preprinted designation "Form 04 0862" and shows a copyright date of 1981. Guaranty # 1, the guaranty which Moss claims resulted from alteration of guaranty # 4, is typed on a preprinted form bearing a preprinted designation "Form 82/12–77" and bears a copyright date of 1977. Moreover, the two forms differ, although not substantially, in the preprinted language. Guaranty # 1 may be, as Moss claims, a forgery, but it is not an alteration of the guaranty which Moss admits he signed. Section 239 affords Moss no defense from liability under guaranty # 4.

 We must reach an opposite conclusion concerning guaranty # 2 and guaranty # 3. According to the evidentiary material submitted by Moss, guaranty # 2 was executed by him and contained a typewritten provision limiting his liability to $611,000. According to Moss' evidence, he never signed any document resembling guaranty # 3. He contends guaranty # 3 resulted from an alteration of guaranty # 2 by removing the typewritten provision limiting his liability. An examination of the copies of these documents included in the record supports this

---

**2.** 15 O.S.1981 § 338 provides:

A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.

**3.** Guaranty # 4, in pertinent part, provides: "liability hereunder will not be effected [sic] or impaired by any failure, neglect or omission by Lender to protect in any manner, the collection

of the indebtedness or the security given therefor, and *regardless of whether the Lender fails or omits to seek a deficiency judgment."* (Emphasis added).

**4.** According to 15 O.S.1981 § 239, "[t]he intentional *destruction, cancellation, or material alteration* of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act." (Emphasis added).

conclusion. Guaranty # 2 is identical in every respect to guaranty # 3, including the signature, except that the typewritten provision limiting Moss' liability does not appear on guaranty # 3. As noted, FDIC did not present any evidentiary material to controvert Moss' evidence, and it did not produce the original of guaranty # 3. On the evidentiary material presented to the trial court, reasonable people could only conclude that guaranty # 2 had been altered to produce guaranty # 3.

■ If the alteration was "material," Moss was exonerated from liability under guaranty # 2 according to § 239. The test in determining if an alteration is material is not solely whether the liability of the parties is increased or decreased, but whether the alteration changes the legal effect of the document or the rights and liabilities of the parties. *See Goss v. Trinity Savings & Loan Association*, 813 P.2d 492 (Okla.1991). As altered, the guaranty did not limit Moss' liability to no more than $611,000. Reasonable people could only conclude that the alteration of guaranty # 2 was material.

### Holder In Due Course Status Under Oklahoma Law

■ FDIC argues the alteration defense is not effective because it is a holder in due course of the guaranty. A holder in due course is a holder who takes an *instrument* for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. *See* 12A O.S.1981 § 3–302(1).[5] The term "instrument," as used in § 3–302(1), "means a negotiable instrument." 12A O.S.1981 § 3–302(1)(e).[6] However, the guaranty in this case is not "payable to order or bearer" and therefore does not meet the applicable statutory definition of an instrument.[7] *Sunrizon Homes, Inc. v. American*

*Guaranty Investment*, 782 P.2d 103 (Okla. 1988).

■ The guaranty also fails to qualify as a "negotiable instrument" under 12A O.S. 1981 § 3–104's requirement that it contain "an unconditional promise or order to pay a sum certain in money."[8] A guaranty is, by its very nature, a *conditional* promise to pay because the guarantor promises to pay only on the condition that the principal debtor fails to pay. By failing to contain an unconditional promise to pay, the guaranties fail to meet a requirement for negotiable instruments. Because a guaranty does not qualify as a negotiable instrument, FDIC is not entitled to the status of a holder in due course under Oklahoma law, and Moss is entitled to raise both real *and* personal defenses to his obligations under the guaranties. *Shepherd Mall State Bank v. Johnson*, 603 P.2d 1115 (Okla.1979).

### FDIC's Claim that Federal Law Bars the Alteration Defenses

■ FDIC argues that Moss may not assert his alteration defense because such defenses against FDIC are barred by federal law. In granting summary judgment, the trial court concluded that 12 U.S.C. § 1823(e) prevented Moss from asserting the alteration defense against FDIC. As it existed when FDIC acquired Security's assets, § 1823(e) prohibited the enforcement only of "any agreement which tends to diminish or defeat the right, title or interest of [FDIC] in any asset" unless the agreement was executed in accordance with the requirements of § 1823(e). For purposes of this section, whether the asset acquired by FDIC is an instrument or whether FDIC qualifies as a holder in due course is irrelevant. *See, e.g., FDIC v. Galloway*, 856 F.2d 112 (10th Cir. 1988).

5. Now 12A O.S.1991 § 3–302(a).

6. This definition is now found at 12A O.S.1991 § 3–104(b).

7. For this reason, the guaranty, if proved altered, is not enforceable according to its original terms because this rule applies to negotiable *instruments,* and this guaranty fails to meet the definition of an instrument under the Uniform

Commercial Code. *See* 12A O.S.1981 § 3–407; *Shepherd Mall State Bank v. Johnson,* 603 P.2d 1115 (Okla.1979).

8. The requirement is now stated in 12A O.S.Supp.1992 § 3–104 as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order."

However, Moss' alteration defense is not based on an "agreement." It is based on acts performed *without his consent* which, as a result of applicable state law, exonerated him from liability on the altered guaranty. Section 1823(e) does not apply to Moss' alteration defense, and the trial court erred in so concluding.

 FDIC also argues it must be treated as a holder in due course under "federal common law" even if it cannot technically qualify as a holder in due course under applicable state law. Because, according to FDIC, Moss' alteration defenses are "personal" rather than "real" defenses, they are not available against FDIC. In the absence of a controlling federal statute, it is a matter of judicial policy as to whether a court should apply state substantive law or fashion a federal common law rule. *FDIC v. Oldenburg*, 34 F.3d 1529 (10th Cir.1994). Resort to federal common law is only necessary when Congress has not plainly spoken to the matter under consideration and in a "few and restricted" instances where there is a conflict between state law and federal policy. *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981).

In *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the United States Supreme Court set forth a three prong test for determining when federal common law will be applied rather than state law: (1) whether it is a federal program which by its "nature are and must be uniform in character throughout the Nation;" (2) whether, apart from considerations of uniformity, "applicable state law

would frustrate specific objections of the federal program" so that special rules are needed; and (3) that consideration must be given to whether "application of a federal rule would disrupt commercial relationships predicated on state law." 440 U.S. at 728–729, 99 S.Ct. at 1459.

The third prong of this test has special application under these circumstances because, unlike most of the cases cited by FDIC in support of its argument, Moss' alteration defense on this guaranty would exonerate him from liability on a *non-negotiable* instrument. Almost all of the cases cited by FDIC involved situations where FDIC would not ordinarily be a holder in due course of a *negotiable* instrument solely because of the manner in which FDIC acquired the asset.[9] The risk of disrupting "commercial relationships predicated on state law" by granting FDIC special privileges as a holder in due course of a negotiable instrument to avoid penalizing FDIC because of the manner in which FDIC acquired that instrument is minimal. However, granting FDIC holder in due course status on a non-negotiable instrument which the maker never intended to be subject to holder in due course privileges almost certainly disrupts "commercial relationships based on state law." For that reason, our analysis of "federal common law" must focus on cases involving assets which could not form the basis of a holder in due course claim.[10]

FDIC was successful in achieving holder in due course status as to group creditor insurance policies in *Federal Deposit Insurance Corporation v. Gulf Life Insurance*, 737 F.2d 1513 (11th Cir.1984).[11] The Court applied

---

**9.** Typically, FDIC acquisition of assets of a failed bank would be treated as a "bulk transaction," and under typical provisions of the Uniform Commercial Code that manner of acquisition prevents the transferee from being a holder in due course. *See, e.g.,* 12A O.S.1991 § 3–302(c).

**10.** We recognize that the United States Supreme Court, in *O'Melveny & Myers v. Federal Deposit Insurance Corporation*, 512 U.S. 79, ——, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994), reiterated that "[t]here is no federal general common law," quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Nevertheless, the Court considered the question

of whether a federal rule of decision should be applied rather than state law to determine whether FDIC, acting as a receiver, should be bound by a California rule which arguably imputed knowledge of a corporation's officers to the corporation. We use the phrase "federal common law" to refer to FDIC's similar argument in this case for application of a federal rule of decision on its holder in due course status.

**11.** The *Gulf Life* Court also held that defenses not based on the parties "mutual assent," such as waiver, estoppel, and unjust enrichment, were not barred by 12 U.S.C. § 1823(e). 737 F.2d at 1516.

the three prong test in *Kimbell Foods,* but concluded that the third consideration, commercial expectations, was "overcome by the counterweight of the first two considerations," and that federal common law barred defenses of waiver, estoppel, and unjust enrichment. The Court relied heavily upon the analysis in *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) which involved a negotiable instrument, a note. Although the *Gulf Life* Court acknowledged that it was dealing with non-negotiable assets, it gave little weight to the difference, concluding at page 1518:

> In the common situation where a note is a negotiable instrument, estoppel, waiver, and unjust enrichment are defenses to which a holder in due course would be impregnable. See U.C.C. § 3–305(2). *Gunter's* analysis thus persuades us that in the majority of cases little dashing of commercial expectations would result from a uniform federal rule protecting the FDIC from such defenses.

*Gulf Life*'s failure to accord any more than lip service to the difference between the commercial expectations attendant to negotiable and non-negotiable instruments makes its analysis unacceptable to follow here. Moreover, the great weight given to *Kimbell Foods* first prong, national uniformity, conflicts with the later-expressed view of the United States Supreme Court that uniformity is the "most generic (and lightly invoked) of alleged federal interests." *O'Melveny & Myers v. Federal Deposit Insurance Corporation,* 512 U.S. 79, ——, 114 S.Ct. 2048, 2055, 129 L.Ed.2d 67 (1994).

Careful analysis of *Gunter* reveals that the issue addressed was quite limited in scope. The *Gunter* Court was confronted with a challenge to the FDIC's right to holder in due course status by *note makers, i.e.,* those whose obligations typically *would* have entitled those acquiring them to holder in due

course status. The issue addressed was the typical commercial code requirement that a holder in due course acquire assets in the "normal," "ordinary," or "regular" course of business and not as part of a bulk transaction. Because purchase and assumption transactions by the FDIC would typically be bulk transactions, this requirement could impede a strong national policy favoring a smooth and rapid transition in banking services. The Court then applied the third prong of the *Kimbell Foods* test, and stated "we doubt that the eventuality of a bank failure plays a significant role in the ordinary commercial expectations of the parties to *negotiable* instruments" (Emphasis added). *Gunter,* 674 F.2d at 872. This analysis has no application to debtors under non-negotiable instruments or assets, *i.e.,* those whose obligations typically would *not* have entitled those acquiring them to holder in due course status.

The better analysis of the application of the *Kimbell Foods* test where non-negotiable instruments are at issue occurred in *Sunbelt Savings, FSB Dallas, Texas v. Montross,* 923 F.2d 353 (5th Cir.1991).[12] The Court noted that although the FDIC must be protected from secret agreements in purchase and assumption transactions, the need for haste and protection did not justify extending federal holder in due course protection to non-negotiable instruments because to do so not only benefits the FDIC, it changes an asset's nature and actually enhances the value. As the *Sunbelt Savings* Court stated at page 357:

> When the FDIC assumes control of an institution, the assets are what they are— negotiable instruments, contracts, real property, and so on. We agree that the FDIC should not be disadvantaged by the circumstances of its assumption of control, but this policy does not require giving the FDIC the ability to transmute lead into gold.

---

12. This case involved a suit by Sunbelt Savings, FSB on notes with variable interest rates which it had acquired from FDIC as receiver of a failed entity, Sunbelt Savings. The Fifth Circuit granted *en banc* rehearing at 932 F.2d 363 (5th Cir. 1991). As a result of that rehearing, the Fifth Circuit issued a *per curiam* opinion in *Resolution*

*Trust Corporation v. Montross,* 944 F.2d 227 (5th Cir.1991), and the Court stated: "The panel opinion at 923 F.2d 353 is reinstated, except that we take no position on the effect of the variable interest rate on the negotiability of the note." 944 F.2d at 228.

The *Sunbelt Savings* Court found it was "fundamentally different" to protect the FDIC from disadvantages attendant upon its role, but that the nature of the assets it receives from an institution should remain unchanged, since "[n]egotiability is the foundation underlying all of Article Three [of the Uniform Commercial Code] and of holder in due course status in particular." 923 F.2d at 356.

A year later, in *Federal Deposit Insurance Corporation v. Payne,* 973 F.2d 403 (5th Cir.1992), the Court was confronted with a case involving a guaranty which the guarantor contended was non-negotiable. The Court analyzed the case under Texas law, and reaffirmed its analysis set forth in· *Sunbelt Savings* that negotiability is the foundation underlying holder in due course status, stating at page 408:

> We held that assets acquired by the FDIC by purchase and assumption retain the same characteristics in the hands of the FDIC as they had in the hands of the insolvent bank. Payne's guaranty was merely a contract between Payne and the Bank. The FDIC is no alchemist and thus has no philosopher's stone with which to transform Payne's non-negotiable contract of guaranty into a negotiable instrument. Consequently, the FDIC cannot have holder in due course status with respect to the guaranty and therefore is not immune to Payne's defenses.

This analysis is particularly appropriate after the decision in *O'Melveny.* State law is presumed adequate unless it conflicts with federal statutory provisions or the "few and restricted" cases where "there is a 'significant conflict between some federal policy or interest and the use of state law.' " *O'Melveny,* 512 U.S. at ——, 114 S.Ct. at 2055 (quoting *Wallis v. Pan Am. Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). There is no federal rule of decision which supplants Oklahoma state law and transmutes guaranty #2 into a negotiable instrument and accords FDIC holder in due course status. Moss may successfully assert his alteration defense concerning guaranty #1 against FDIC, and the trial court erroneously concluded that defense was barred.

### Other Issues

Moss and Exline raise other allegations of error which become unnecessary to address because of our decision on the application of 12 O.S.1981 § 686 and Moss' guaranty defenses. Accordingly, we do not address those issues.

### CONCLUSION

FDIC may not recover against Moss and Exline on the notes because it failed to preserve its rights to a deficiency judgment under 12 O.S.1981 § 686. Moreover, FDIC may not recover from Moss on guaranty #2 because, on the basis of the evidentiary material submitted to the trial court, reasonable people could only conclude that it had been materially altered without Moss' consent. However, based upon that same evidence, reasonable people could only conclude that Moss executed guaranty #4, that it was not altered, and that by executing that guaranty Moss waived any right to exoneration because of FDIC's failure to preserve its rights to a deficiency judgment. The trial court's judgment is reversed, and the case is *re*manded with instructions to enter judgment in favor of Moss and Exline on the notes, judgment in favor of Moss on guaranty #2, and in favor of FDIC in an appropriate amount on guaranty #4.

**REVERSED AND REMANDED WITH INSTRUCTIONS**

HANSEN, P.J., and BUETTNER, J., concur.